[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 264 
This case presents a question regarding the proper test for determining causation in workers' compensation cases and a question regarding the proper standard for reviewing workers' compensation cases.
On September 2, 1992, Vallie J. Cunningham, who worked as a punch press operator, was rendered permanently and totally disabled as the result of a stroke he suffered while at the workplace of his employer, Trinity Industries, Inc. On December 4, 1992, Cunningham sued Trinity, seeking workers' compensation benefits. The trial court, after a bench trial, entered a judgment for Cunningham, "find[ing] that [Cunningham had] satisfied the dual burden of proving legal and medical causation." Trinity appealed, arguing, among other things, that Cunningham had failed to present substantial evidence of either legal or medical causation. The Court of Civil Appeals affirmed. Trinity Industries, Inc. v. Cunningham, 680 So.2d 253
(Ala.Civ.App. 1995). We granted certiorari review to determine whether, in affirming, the Court of Civil Appeals had erred in overruling caselaw regarding the test for causation in "nonaccidental" injury cases and whether that court had misconstrued the "substantial evidence" standard of review.
Cunningham's duties required him to continually lift pieces of metal weighing 15 pounds; he would place a piece in the punch press machine, punch it, remove it, and pick up the next piece.[1] On the day he suffered the stroke, Cunningham began his work around 7:00 a.m., and he continued to work until around 11:30 a.m., taking only one 15-minute break. After he left his machine around 11:30, Cunningham walked to the bathroom, sat down on the toilet, and while sitting there experienced symptoms of a stroke. He was later informed that he had suffered a stroke, and that he was an undiagnosed hypertensive. Before the stroke, Cunningham had never experienced high blood pressure.
We have repeatedly stated that an employer is not the absolute insurer of an employee's health and should bear only the costs of compensating employees for accidents that arise out of and in the course of their employment.[2] See, e.g.,Reynolds Metals Co. v. Gray, 278 Ala. 309, 178 So.2d 87 (1965). Section 25-5-31, Ala. Code 1975, provides:
 "When personal injury . . . is caused to an employee by an accident arising out of and in the course of his employment, of which injury the actual or lawfully imputed *Page 266 
negligence of the employer is the natural and proximate cause, [the employee] . . . shall receive compensation by way of damages therefor from the employer. . . ."
Whether an accidental injury "arises out of" the claimant's employment is basically a question of whether there is a causal relationship between the claimant's performance of his or her duties as an employee and the complained-of injury. Determining whether a causal relationship has been established between the performance of the claimant's duties as an employee and the complained-of injury is especially difficult and troublesome when the complained-of injury was not produced by some sudden and traumatic external event.[3] For simplicity, we will refer to such events as "nonaccidental" injuries. More than 50 years ago, in Pow v. Southern Constr. Co., 235 Ala. 580, 180 So. 288
(1938), this Court held that the term "accident arising out of employment" included more than just incidents in which injuries arise from sudden and traumatic external causes. In Pow, the Court allowed recovery to the family of a person who had contracted and had subsequently died from pneumonia, after having been forced by his employment duties to work outside in very wet conditions. However, the Court did not hold that every injury that could conceivably be argued to have been linked to a person's employment would be compensable. Instead, the Court held that a claimant in such a situation must prove:
 "[(1) That the employment] he was engaged [in exposed him] to a danger, materially in excess of that to which people commonly in that locality are exposed, when not situated as he is when thus performing his service, and [2] that such excessive exposure may be found to have been the direct cause of the injury, though operating upon other conditions of common exposure."
Pow, 235 Ala. at 584, 180 So. at 290 (quoting Gulf States SteelCo. v. Christison, 228 Ala. 622, 154 So. 565, 569 (1934)).
The Court of Civil Appeals, in City of Tuscaloosa v. Howard,55 Ala. App. 701, 318 So.2d 729 (Ala.Civ.App. 1975), grappled with the very difficult problem of determining when heart attacks and other similar physical ailments of a "nonaccidental" nature, which, like pneumonia, can and do occur independently of on-the-job risks, "arise out of" the claimant's employment and, therefore, are compensable under our workers' compensation statutes. That court, following the general development of workers' compensation law nationwide, adopted and further refined the two-part causation test set out in Pow v. Southern Constr. Co..[4] In order to establish "legal causation," which is the first prong of the causation standard that the Howard case set out, the injured employee had to show that "the performance of the duties for which he [or she] is employed . . . expose[d] [him or her] to a danger or risk materially in excess of that to which people not so employed are exposed [ordinarily in their everyday lives]." Howard,55 Ala. App. at 705, 318 So.2d at 732. Once a claimant establishes "legal causation," he or she then must establish "medical causation," the second prong of the Howard standard, by producing evidence tending to show that the particular exposure to risk proven in regard to prong one "was in fact [a] contributing *Page 267 
cause of the [complained-of] injury." Howard,55 Ala. App. at 706, 318 So.2d at 732.
In its review of this case, the Court of Civil Appeals overruled Howard, based on its conclusion that the holding inHoward "was contrary to our Supreme Court's holding in [Southern Cotton Oil Co. v. Wynn, 266 Ala. 327, 96 So.2d 159
(1957)]." Trinity, 680 So.2d at 257. In Wynn, this Court allowed recovery for a claimant who was "stricken with a cerebral hemorrhage" while he was shoveling coal for his employer. The Court of Civil Appeals correctly pointed out:
 "The petitioner, Southern Cotton Oil Co., contended that even though Wynn's injury was caused by the exertion of shoveling coal, the trial court could not conclude that the injury arose out of his employment without also finding that Wynn was subjected to unusual strain or overexertion or extrahazardous circumstances in the performance of his work[, relying on] Pullman-Standard Car Mfg. Co. v. Lively, 239 Ala. 684, 196 So. 870 (1940) (heat exhaustion); Pow, [235 Ala. 580, 180 So. 288 (1938),] and [Gulf States Steel Co. v. Christison, 228 Ala. 622, 154 So. 565 (1934) (heat exhaustion)]. [The Court rejected the petitioner's argument. In doing so, the Court] stated: 'The rule which can be drawn from these cases is that when an injury to an employee results from exposure, the injury cannot be regarded as arising out of his employment unless he is subjected to unusual risk and excessive exposure because of the nature of his work' [Southern Cotton Oil Co. v. Wynn, 266 Ala. 327, 332, 96 So.2d 159, 163 (1957)]. The Court further stated: 'It seems clear that this court has limited application of the foregoing rule to injuries resulting from exposure.' Id. (emphasis added [by the Court of Civil Appeals]). . . . '[A] finding by the trial court that [Wynn] had been subjected to unusual strain or overexertion was not necessary to support a conclusion that [Wynn's] injury was caused by an accident arising out of his employment.' Wynn, 266 Ala. at 333, 96 So.2d at 163-64."
Trinity, 680 So.2d at 256.
The causation standard applied in Howard is not inconsistent with this Court's holding in Wynn. A claimant does not have to show any "unusual strain or overexertion" in order to satisfy the first prong of the Howard standard. Rather, to establish "legal causation," one seeking redress under the Workers' Compensation Act for "nonaccidental" injuries need only establish that the performance of his or her duties as an employee exposed him or her to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives. Clearly, a person shoveling coal is exposed to dangers materially in excess of the dangers to which we all face in merely living. The Howard "legal causation" standard was intended to act, and does act, to prevent employers from being unfairly saddled with the cost of being made the absolute insurer of an employee's health. Without a "legal causation" standard, a person who becomes ill or dies because of a natural cause, such as an aneurysm or slipping into a diabetic coma, unrelated to any job-related risk, would be able to recover under our workers' compensation statute merely because he or she was lucky enough to have the disabling event resulting from that natural cause occur at the place of employment or just after the employee has left the place of employment. Such a result was not intended by the legislature when it enacted our workers' compensation law. See, e.g., Reynolds Metals Co. v.Gray, 278 Ala. 309, 178 So.2d 87 (1965); B.F. Goodrich Co. v.Martin, 47 Ala. App. 244, 253 So.2d 37, cert. denied, 287 Ala. 726, 253 So.2d 45, 46 (1971).
The confusion as to whether the Court of Civil Appeals inHoward overstepped the bounds set by our earlier cases such asSouthern Cotton Oil Co. v. Wynn is a product of the evolutionary nature of Alabama's workers' compensation law. The Court in Wynn stated that "in order to show [causation], the plaintiff must establish a logical causal connection betweenhis work and the injury." 266 Ala. at 331, 96 So.2d at 162
(emphasis added). In Howard, the Court of Civil Appeals, continuing the on-going effort of Alabama's appellate courts to chart the boundaries of our workers' compensation law and to create coherent and workable standards, *Page 268 
enunciated a unified standard[5] of causation for all "nonaccidental" injury cases. The Court of Civil Appeals inHoward added form to the "logical connection" causation test set forth by this Court in Wynn, by slightly modifying the Pow
standard in order to create a general standard for "nonaccidental" injury cases. The Court of Civil Appeals inSlimfold Mfg. Co. v. Martin, 417 So.2d 199, 201-02
(Ala.Civ.App. 1981), cert. quashed, 417 So.2d 203 (Ala. 1982), aptly stated:
 "[I]n Alabama the employment must be the source and cause of the accident. Our Supreme Court in Wooten v. Roden, [260 Ala. 606, 610, 71 So.2d 802, 805 (1954)], stated that in order to satisfy the 'source and cause' requirement 'the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment and not otherwise. . . .' The causation requirement was further elucidated in City of Tuscaloosa v. Howard.. . ."
After much research, we must conclude that Howard sets out the correct causation standard for all workers' compensation claims relating to "nonaccidental" injuries.[6]
Cunningham's injury occurred on September 2, 1992; therefore, this case is governed by the new Workers' Compensation Act, Ala. Acts No. 92-537, which became effective May 19, 1992. The new Act provides that "[i]n reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness." Ala. Code 1975, § 25-5-81(e)(1). It further provides that "[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2).
Although the new Act does not define "substantial evidence," this Court has defined that term as it is used in Ala. Code 1975, § 12-21-12(d), which was enacted before the new Workers' Compensation Act and which pertains to "all civil actions brought in any court of the State of Alabama"; this Court has defined the term "substantial evidence," as it is used in §12-21-12(d), to mean "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co., 547 So.2d 870,871 (Ala. 1989). We need look no further for an adequate, applicable definition. See, also, Ala. Code 1975, § 6-5-542(5); and Clements v. Dr. John Alvan Stewart, P.C., 595 So.2d 858,861 (Ala. 1992) (quoted with approval in Campbell v. Williams,638 So.2d 804 (Ala.), cert. denied, ___ U.S. ___,115 S.Ct. 188, 130 L.Ed.2d 121 (1994)), wherein the Court stated that the difference between the definition of "substantial evidence" as that term is used in § 6-5-542(5) and the definition of that term as it is used in § 12-21-12(d) is a "difference without a distinction." Therefore, under the applicable standard of review, we will not reverse the trial court's finding of fact if that finding is supported by substantial *Page 269 
evidence — if that finding is supported by "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West; § 12-21-12(d). To the extent that Whitsett v. BAMSI, Inc., 652 So.2d 287
(Ala.Civ.App. 1994), and its progeny are inconsistent with this standard, they are overruled.
Trinity argues that Cunningham failed to produce substantial evidence as to the causation element of his workers' compensation claim. As we have stated above, in order to establish causation in a workers' compensation case where the injury is nonaccidental, meaning that the injury was not caused by a sudden and unexpected external event, a claimant must satisfy a two-part causation test by producing substantial evidence establishing both (a) legal causation and (b) medical causation. See City of Tuscaloosa v. Howard, 318 So.2d 729
(Ala.Civ.App. 1975); and Ex parte Moncrief, 627 So.2d 385, 388
(Ala. 1993) (citing Hammons v. Roses Stores, Inc., 547 So.2d 883
(Ala.Civ.App. 1989)) ("for an injury to be compensable under the Workers' Compensation Act, the employee must establish both legal and medical causation"). Merely showing that there is a close spatial or temporal relationship between the injury and the place or time of the claimant's performance of his or her job is not in itself always sufficient to satisfy either of the two prongs of Alabama's workers' compensation nonaccidental injury causation test.
After reviewing the evidence submitted at trial, we think it is clear that Cunningham produced substantial evidence tending to show legal causation — that in performing his duties as a punch press operator he was exposed to "danger or risk materially in excess" of that danger to which all persons are ordinarily exposed in their everyday lives. Howard, 318 So.2d at 732. Cunningham produced more than adequate evidence to establish that he was exposed to cardiovascular stress in the operation of his punch press "materially in excess" of the base-line level of risk to which we all are exposed in merely living. However, a much closer question exists as to whether Cunningham produced substantial evidence tending to establish "medical causation," the second prong of the Howard
nonaccidental injury causation standard.
In order to establish medical causation, a claimant like Cunningham must produce substantial evidence tending to show that the exposure to risk or danger proven in step one of theHoward test "was in fact [a] contributing cause of the injury" for which benefits are sought. Howard, 318 So.2d at 732. "Whether the claimant has satisfied this test . . . must be determined on a case-by-case basis." Ex parte Price,555 So.2d 1060, 1062 (Ala. 1989). We further stated in Price that a claimant need not always produce medical expert testimony as to the issue of medical causation in order to carry his burden of proof. Id. In determining whether substantial evidence was produced at trial as to medical causation, we must look to see whether "evidence [was produced at trial] of such weight and quality that fair-minded persons in the exercise of impartial judgment [could] reasonably infer that the risk or danger proven to have existed "was in fact [a] contributing cause of the injury."
Cunningham had to produce substantial evidence linking his stroke to the cardiovascular stress he was subjected to in running his punch press. Because the nature and origin of strokes is obviously beyond the understanding of the average person, this case falls within the Price exception, so that medical evidence in the form of expert medical testimony or excerpts from learned medical treatises was necessary to establish medical causation. See Charles Gamble, McElroy'sAlabama Evidence, § 128.10(1), pp. 346-47 (4th ed. 1991) ("It goes without saying that there are certain medical matters which are subject only to expert testimony and are outside the understanding of the lay witness."). As shown from the testimony at trial, doctors and medical researchers themselves disagree vigorously as to what can actually cause the onset of a stroke. See also Charles J. Frankel, James G. Zimmerly, and Richard M. Patterson, eds., Lawyers' Medical Cyclopedia ofPersonal and Allied Specialties, Vol. 5A, *Page 270 
§ 34.27a(E) (Supp. 1984 1995). The question for this Court then becomes whether, when viewed in the light most favorable to Cunningham, as it must be viewed under the applicable standard of review, the expert medical testimony presented by Cunningham in conjunction with his other evidence constitutes "substantial evidence" of "medical causation," as those terms are defined above.
Dr. Gordon Kirschberg, a neurologist testifying for Cunningham, testified as follows:
 "Q. What are the medical conditions that are contributing factors to someone suffering a stroke?
 "A. . . . [T]he most common causes, or shall we say contributing factors, are atherosclerosis or so-called hardening of the arteries and hypertension or high blood pressure, but other things also contribute greatly, either via those two or by themselves. For example, smoking is a major contributor. . . .
 "Q. What is the role of physical activity as being the producing cause or initiating cause of a stroke?
 "A. That is something which nobody really knows. . . . However, there's no question that exercise and physical activity elevates blood pressure. So, in that case, you can have elevated blood pressure causing or having some cause of influence on the possibility of stroke.
". . . .
 "[Q. What have you discovered in reviewing certain medical records that was relevant to your opinion in this case?]
 "A. . . . [T]he medical records show clearly that [Cunningham] had some sort of vascular accident. . . . The thing that was most intriguing to me was that it was discovered when he was admitted to the hospital that he had high blood pressure. . . . [H]is carotid arteries were scanned with a Doppler scan and they looked normal, so they did not have a great amount of atherosclerotic disease, which means hypertension is the most likely underlying cause for his stroke. . . . I think the major fact was — hypertension was the cause of the stroke.
 "Q. And you discovered from the records that he was an untreated hypertensive?
"A. That's correct.
". . . .
 "Q. . . . [T]he rise in the blood pressure would be the condition then that sets the stage for the stroke?
"A. Correct.
 "Q. . . . If you assume that from seven o'clock to eleven o'clock — 11:30, Mr. Cunningham was involved in operating a machine, running and setting the machine up, lifting materials consistently for that period of time until the onset of his symptoms, would that be physical activity such as could raise his blood pressure?
". . . .
 "A. The activities that you described, if he was doing that, would be exercise-type activities, physical labor and so forth, which would undoubtedly elevate the blood pressure during the time that that was going on.
 "Q. . . . [I]t is the elevated blood pressure then that is the contributing cause in your opinion to his stroke?
 "A. I think the chronic elevation of blood pressure is the cause of the stroke.
 "Q. Okay. And — but the physical activity that day is the — go ahead.
 "A. . . . I would think that if they are chronically hypertensive vessels and you give one last push to the blood pressure it may cause some spasm or little clots to fall off and that may, in fact, be the cause of the stroke."
In order to establish "medical causation" in a workers' compensation case, a claimant need only produce substantial evidence tending to show that the exposure to risk proven in step one of the Howard two-part causation test, in this case cardiovascular stress, "was in fact [a] contributing cause of the injury," in this case the stroke. Howard, 318 So.2d at 732 (emphasis added). Cunningham was not required to produce substantial evidence indicating that the exertion was the only factor contributing to the onset of the stroke. Although Dr. Kirschberg's testimony seems to be weak and at *Page 271 
points contradictory, he does conclude that the cardiovascular stress, associated with the strenuous work that Cunningham had been performing for four and one-half hours before collapsing while on a break, could have precipitated the onset of Cunningham's stroke.
The Court in Wynn stated:
 "The only expert witness . . . testified . . . that a cerebral hemorrhage was the rupture of a blood vessel in the head, that such a rupture was the result of high blood pressure, that any exertion would tend to increase the blood pressure, and that the exertion of shoveling coal could have caused the cerebral hemorrhage suffered by the plaintiff."
266 Ala. at 331, 96 So.2d at 162 (emphasis added). In rejecting the employer's assertion that Wynn's evidence of causation was insufficient, this Court stated: "[T]he circumstances of the plaintiff's injury, considered in conjunction with the medical testimony, support a fair inference that the injury was caused by the exertion of [Wynn's] work." 266 Ala. at 332,96 So.2d at 163. Although Wynn was decided before the legislature adopted a substantial evidence standard for workers' compensation actions, Wynn's reasoning is still valid. In the context of certain injuries or diseases, the origin of which in general can be scientifically linked to certain strong risk factors or to certain stimuli but the origin of which as to any one person cannot be scientifically determined with certainty, medical evidence of causation in a workers' compensation case, whether in the form of testimony or treatise excerpts, need only show that the work-related risk could have been a precipitating factor in bringing about the onset of the disease.[7]
If we were to require a higher level of certainty from medical experts to establish medical causation in cases like this one, we would effectively be removing diseases like stroke from the list of compensable diseases. We would also be encouraging claimants to seek out experts of lower quality and of less integrity. Cunningham's expert testified honestly and forth-rightly. Because of the peculiar nature of strokes, no expert could have legitimately testified that any one factor definitely caused Cunningham's stroke. When we consider Dr. Kirschberg's expert opinion testimony in conjunction with the circumstances of the injury, we must conclude that Cunningham produced substantial evidence of medical causation.
Although the Court of Civil Appeals applied an incorrect rationale, it reached a correct decision. Its judgment is affirmed.
AFFIRMED. *Page 272 
SHORES,* KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX, J., dissent.
[1] The testimony shows that Cunningham handled 3 pieces of metal per minute, or 180 pieces per hour, in this manner. Therefore, the evidence would suggest that Cunningham had handled approximately 765 pieces of metal in this matter on the morning he suffered the stroke.
[2] In Alabama Textile Products Corp. v. Grantham, 263 Ala. 179,183, 82 So.2d 204, 207 (1955), this Court stated:
 "[T]he injury must be caused by an accident [1] arising out of and [2] in the course of employment to be compensable. Hardisty v. Woodward Iron Co., 214 Ala. 256, 107 So. 837; [(1926)] Jones v. Sloss-Sheffield Steel Iron Co., 221 Ala. 547, 130 So. 74. [(1930)] For an accident to 'arise out of employment' the employment must have been the cause and source of the accident and the resultant injuries must be traceable to a proximate cause set in motion by the employment, not by some other agency. Foster v. Continental Gin Co., 261 Ala. 366, 74 So.2d 474. [(1954)] And an injury to an employee 'arises in [the] course of employment' within the compensation act when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling duties of his employment or engaged in doing something incident to it. Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666. [(1947)]"
[3] An employee claiming to have been injured by a sudden and traumatic external event (an "accident" in the colloquial sense, e.g., being struck by a falling hammer on a construction site or slipping off a ladder) need only produce substantial evidence tending to show that the alleged "accident" occurred and tending to establish "medical causation," by demonstrating that the "accident" was a contributing cause of the complained-of injuries and complications.
[4] Arthur Larson, in his workers' compensation treatise, advocates the use of a two-part causation test. 1A Larson, TheLaw of Workmen's Compensation, § 38.83(a) (1995 Nov. 1995 Supp.). Larson cites cases from many states adopting two-part causation tests similar to the test enunciated in Howard by the Court of Civil Appeals. See, e.g., DeSchaaf v. IndustrialComm'n, 141 Ariz. 318, 686 P.2d 1288 (Ariz.Ct.App. 1984);McCall v. Dick Burns, Inc., 408 So.2d 787 (Fla. Dist. Ct. App. 1982); Bryant v. Masters Mach. Co., 444 A.2d 329 (Me. 1982);Courtney v. City of Orono, 463 N.W.2d 514 (Minn. 1990); Leitz v.Roberts Dairy, 237 Neb. 235, 465 N.W.2d 601 (1991); Coday v.Willamette Tug Barge Co., 250 Or. 39, 440 P.2d 224 (1968);Allen v. Industrial Comm'n, 729 P.2d 15 (Utah 1986); Pitsch v.Dep't of Indus., Labor Human Relations, 47 Wis.2d 55,176 N.W.2d 390 (1970).
[5] The standard enunciated in Pow was originally created to apply in cases of exposure to the elements (e.g., temperature and humidity). See, e.g., Gulf States Steel Co. v. Christison,228 Ala. 622, 154 So. 565 (1934) (heat exhaustion); Pow v. SouthernConstr. Co., 235 Ala. 580, 180 So. 288 (1938) (exposure to extremely damp conditions); Pullman-Standard Car Mfg. Co. v.Lively, 239 Ala. 684, 196 So. 870 (1940) (heat exhaustion). Those early cases posed very troubling analytical problems for courts attempting to apply relatively new workers' compensation schemes, because all persons, whether at work or at home, are constantly exposed to the elements. This Court, following cases from other jurisdictions, required that a claimant prove "excessive exposure" to the elements, meaning that a claimant must prove that he or she was exposed to some danger in excess of what he or she would have been exposed to if not at work (e.g., extremely cold or extremely hot temperature or high humidity) in order to recover for exposure-to-the-elements injuries. Pow, 235 Ala. at 584, 180 So. at 291. The Howard
court realized that exposure-to-the-elements cases need not be treated under a standard analytically different from the standard applied in other "nonaccidental" injury cases, because all "nonaccidental" injury causation standards, including thePow standard, are designed to determine whether there has been an exposure to risk in excess of the baseline exposure to risk that we all face daily in merely living.
[6] This Court has applied the Howard two-part causation standard approvingly and without question since its inception. See, e.g., Ex parte Price, 555 So.2d 1060 (Ala. 1989); Ex parteMoncrief, 627 So.2d 385 (Ala. 1993).
[7] The Michigan Supreme Court in Kostamo v. Marquette Iron Co.,405 Mich. 105, 274 N.W.2d 411 (1979), addressed the problem of establishing medical causation in cases where the complained-of injury or disease arises from a number of contributing factors. Although the court in Kostamo was faced with the task of determining whether the plaintiff had submitted adequate evidence of causation in order to establish a causal link, for workers' compensation purposes, between the plaintiff's work and the heart attack he suffered, the reasoning of that case applies equally as well to cases involving strokes alleged to have been work-related. The Michigan Supreme Court stated:
 "Medical testimony in the context of compensation proceedings for cardiac injuries often encounters special difficulties. Cross-pollination of medical and legal concepts of causality can confuse the ultimate issue and obscure the function of the fact finder.
 "Doctors and lawyers approach the problem of cause from different perspectives. It has been said: 'Medically, "the cause" may be considered that activity or agent without which a condition would not have appeared. From the legal point of view, if some factor or element plays a role in bringing about a result sooner than ordinarily would be expected, it may be considered "a" cause for which legal liability may accrue.'
 "The medical assessment of causality in heart cases is complicated by the many factors involved in the causation and progression of an individual's cardiac disorder.
". . . .
 "Dr. English, Kostamo's medical expert, stated that Kostamo's work 'could have,' 'might have,' 'possibly' precipitated or aggravated Kostamo's heart attack.
". . . .
 "Dr. English's failure to state a medical opinion with certainty reflects the current status of scientific knowledge, not a lack of merit in the claimant's position. 'The matter does not turn on the use of a particular form of words by the physicians in giving their testimony.' Sentilles [v. Inter-Caribbean Shipping Corp., 361 U.S. 107
[80 S.Ct. 173, 4 L.Ed.2d 142] (1959)]. The law does not place on claimants the impossible burden of proving with certainty
that work-related stress contributed to their cardiac disorder."
(Emphasis added.)
* Although Justice Shores was not present when this case was orally argued, she listened to the tape of that oral argument on March 4, 1996.