YATES, Judge.
Michael Hargrove sued his employer, M & D Mechanical Contractors, Inc. (“M & D”), and his employer’s workers’ compensation carrier, Liberty Mutual Insurance Company (“Liberty Mutual”), on January 24, 1994, seeking to recover workers’ compensation benefits for an injury he sustained to his left eye on September 14,1992, during the course of his employment. Hargrove alleged that the injury to his left eye had caused him emotional distress and had caused him to suffer loss of vision in both eyes. Liberty Mutual filed its initial motion to dismiss on February 4,1994, and filed a renewed motion on March 1, 1994. The trial court, finding that Hargrove’s “complaint fails to allege any circumstances which would invoke § 25-5-8(f)(4), [Ala.Code 1975], and thereby allow a direct action against the insurer,” dismissed Liberty Mutual from the suit.
Following an ore tenus proceeding, the court, on October 30, 1996, made the following findings:
“During the year following plaintiffs injury, the plaintiff was examined by a series of physicians, including ophthalmologists and a neuroophthalmologist, none of whom could find any lingering physiological impairment to plaintiffs eyes. Nonetheless, the plaintiff asserts that over the course of that year, he lost the vision in both eyes to the extent that he is now totally blind and cannot even discern light and dark.
“The plaintiff is a thirty-eight year old male with a history of medical complaints and poor vision in his right eye since birth. His current inability to see has been diagnosed by Dr. Thomas Shafer as Munchau-sen’s Syndrome and by Dr. Charles Ford as Simulated Blindness.
“Two issues were presented for the court’s determination: 1) Is the plaintiff blind? 2) If he is blind, was this blindness proximately caused by his on-the-job injury?
“The parties submitted notes and reports of numerous physicians who have examined and treated the plaintiff. The court has carefully reviewed all of these materials, and notes that information the plaintiff gave to the physicians treating his eye injury appears to conflict with information he supplied his primary care physician, Dr. Vance Fentress.
[[Image here]]
“Notwithstanding the foregoing, having studied the medical reports, depositions, videotapes, and plaintiffs demeanor during trial, the court is unable to find that the plaintiff can see. However, the court does not find by substantial evidence that the *289 plaintiff has been truthful as to the onset of his blindness.
“It appears from the totality of the evidence that the plaintiff himself did not believe he had lost the sight in his left eye until almost one year after the incident at work. During that intervening time the plaintiffs marriage was deteriorating and his children were involved in a very serious automobile accident which left two of the children in comas. The plaintiff admitted in court that his children’s accident and the injuries they sustained were more traumatic for him than the accident at work. Additionally, it was not until after the children’s accident that plaintiff went totally ‘blind.’
[[Image here]]
“Based on the foregoing, the court finds that plaintiffs assertion that his blindness was caused by the incident at work is not founded on substantial evidence. Accordingly, plaintiff is not entitled to workers’ compensation benefits.”
Hargrove appeals, contending: (1) that the court used the wrong standard in requiring him to prove “proximate cause”; and (2) that the court’s findings of fact were not supported by substantial evidence.
At the outset, we note that because of the date of Hargrove’s injury, this case is governed by the new Workers’ Compensation Act. This new Act provides that an appellate court’s review of the proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(l), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, the findings of the circuit court shall not be reversed if those findings are supported by substantial evidence. § 25-5-81(e)(2), Ala.Code 1975. Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Industries, Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Further, we “will view the facts in the light most favorable to the findings of the trial court.” Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
At the time of the injury, Hargrove was 34 years of age. He had been employed as a laborer with M & D for approximately 8 weeks, earning a weekly wage of $240. Har-grove had had a history of problems with his right eye and had been unable to see anything out of that eye since childhood. He testified that he had 20/20 vision in his left eye and that he had never had any problems with it before his injury. Hargrove also had a history of migraine headaches and had been prescribed a wide range of medications by his primary physician, Dr. Vance Fen-tress.
On September 14, 1992, Hargrove was assigned to work in the construction of a new wastewater treatment plant. Hargrove was spreading dirt and gravel in a layered ditch when some of the dirt and gravel spilled out of the backhoe. Hargrove testified: “[the backhoe] went out of control and went full throttle_ It was on top of us before — it was in my — it was in my eyes and all over my legs and everywhere before I could do anything.” Initially, Hargrove used drinking water at the site to try and flush the gravel and debris out of his eye. He then went to a neighboring tennis court bathroom and attempted to flush his eye. When this also failed, a co-worker took Hargrove to the office of the site superintendent, Johnny Horton, for further help.
The record discloses conflicting testimony about what happened in Horton’s office. Hargrove testified that Horton had told him that his eye was bleeding and removed “two pieces of fine rock” from Hargrove’s eye. Horton testified that he, with the help of site clerk Frederick Robinson, used a flushing treatment to try and get the trash out of Hargrove’s eye, but that he did not see a cut, blood, or anything else come from Har-grove’s eye. Robinson testified that he did not recall Hargrove’s eye bleeding or seeing *290 anything come from the eye. When Har-grove still complained of discomfort, Robinson took him to Job Health, the company clinic. An accident report, setting forth the nature of the accident as described by Har-grove, was promptly filed.
At Job Health, a doctor removed a foreign body from Hargrove’s eye and covered the eye with a patch, noting that further treatment would be needed for up to 10 days. At a September 16 follow-up exam, Dr. Jeffrey Hindman noted that Hargrove had said that he could not see out of his left eye. Dr. Hindman recommended that Hargrove be excused from work until his vision returned to normal. Dr. Hindman suggested that, if after one week Hargrove still had problems, he be referred to a psychiatrist. Horton testified that Hargrove returned to the work site and informed him that he would be able to return to work the following day. However, Hargrove did not return to work.
When Hargrove continued to complain about vision loss, he was then referred to several different eye doctors. Although none could find any evidence of a physical injury to Hargrove’s left eye, they could not explain his vision loss. On October 27, 1992, Dr. Gates Murphy noted that Hargrove’s right eye was amblyopic[1] and that Hargrove could count fingers approximately 6 feet in front of his face. On November 24, 1992, Dr. Harold Skalka also noted a history of amblyopia in Hargrove’s right eye, but did not find anything conclusive as to the left eye. On February 18, 1993, Dr. James Byrne concluded that he could not find any significant injury to Hargrove’s left eye. Dr. Byrne noted that Hargrove had been examined by four different eye doctors and that none could find anything wrong with him.
At the request of the Social Security Administration, Hargrove was examined by Dr. Michael Maund on several different occasions and a series of optical tests was performed. Dr. Maund, like the physicians who had previously examined Hargrove, told Hargrove that there was nothing physically wrong with his eye, but that, because of the trauma surrounding the accident, Hargrove’s brain was telling him that he could not see. Dr. Maund concluded that Hargrove was not “faking” and diagnosed him as having “psychogenic amblyopia,” a condition related to what he called “an emotional type of thing or circumstance or event that can cause the patient to develop reduced vision.” He said, “The patient sees better than they think they do.”
On October 12, 1994, Dr. Thomas Shafer examined Hargrove and diagnosed him as suffering from Munchausen’s syndrome, which he described as “a factitious illness or syndrome where people malinger or produce physical illnesses or physical symptoms for a psychological gain.” He added, “The behavior of a Munchausen patient is that they believe in kind of unconscious or psychological symptoms.” Dr. Shafer further concluded that Hargrove had some evidence of “conscious malingering,” meaning that there was a conscious, intentional production of the symptoms mixed with hysterical amblyopia or blindness. The person has the disabling symptoms, but the symptoms are actually coming from the mind, rather than the body.
On February 28, 1995, Dr. Charles Ford diagnosed Hargrove as having “simulated blindness.” He concluded that Hargrove did not have Munchausen’s syndrome, and he acknowledged the possibility of an underlying conversion disorder or malingering. Dr. Ford further noted that he could not make a definite diagnosis and recommended that Hargrove attend an inpatient behavioral modification program.
In denying Hargrove’s workers’ compensation benefits, the trial court cited Hargrove’s failure to mention his injury during a visit to his regular doctor on September 18, 1992; Hargrove’s failure to acknowledge previous problems with headaches, in a test administered by Dr. Charles Ford; and conflicting reports as to whether blood was found in Hargrove’s eye after the accident.
Hargrove had not worked for M & D since his September 14, 1992, injury. He received temporary workers’ compensation benefits of $159.10 per week for 24 weeks. Hargrove *291 also began receiving Social Security disability payments.
To receive compensation for an injury under our Workers’ Compensation Act, the employee must establish both legal and medical causation. Ex parte Moncrief, 627 So.2d 385 (Ala.1993). “Once legal causation has been established, i.e., once it has been established that an accident arose out of and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.” Id., at 388. To establish medical causation, an employee must produce substantial evidence tending to show that the exposure to the risk or conditions was in fact a contributing cause of the injury. Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996.); Ex parte Valdez, 636 So.2d 401 (Ala.1994). Medical causation may be found by the trial court without testimony from medical doctors. Ex parte Price, 555 So.2d 1060 (Ala.1989). The totality of the evidence, including testimony from both lay witnesses and expert witnesses, may satisfy the requirement of a showing of medical causation. U.S. Steel, a Division of USX Corp. v. Nelson, 634 So.2d 134 (Ala.Civ.App.1993). If it is established by legal evidence that an employee has suffered a physical injury or trauma in the line and scope of his employment and he develops a neurosis as a proximate result of that injury or trauma, which neurosis causes or contributes to an occupational or physical disability, the disability is compensable. Fruehauf Corp. v. Prater, 360 So.2d 999 (Ala.Civ.App.1978). Further, in order for an employee in Alabama to recover for psychological problems, there must be a physical injury to the body. Goolsby v. Family Dollar Stores of Alabama, Inc., 689 So.2d 104, 106 (Ala.Civ.App.1996). Finally, we are mindful that the Workers’ Compensation Act is to be liberally construed to accomplish its beneficent purposes and that doubts must be resolved in favor of the employee. Holmes v. Gold Kist, Inc. 673 So.2d 449 (Ala.Civ.App.1995).
We note that there is no dispute regarding legal causation, i.e., that Hargrove’s September 14, 1992, injury occurred within the line and scope of his employment. This court must determine whether, as Hargrove contends, substantial evidence was presented to show that the September 14, 1992, accident was the proximate cause of his blindness. Hargrove further contends that the trial court erroneously failed to resolve in his favor all reasonable doubts as to the evidence and also failed to liberally construe the Workers’ Compensation Act.
In establishing medical causation, Hargrove, as a workers’ compensation claimant, was not required to produce substantial evidence indicating that his September 14, 1992, on-the-job injury was the only factor contributing to his blindness. See Ex parte Trinity Industries, Inc., supra, at 270. Har-grove only has to prove that the job-related injury was a contributing factor. Id. It is undisputed that Hargrove’s children were seriously injured in an automobile accident on October 29, 1992, and that his marriage had deteriorated. However, the record shows that Hargrove’s complaints of vision loss began immediately after the September 14, 1992, injury. Our review of the record shows that during the year following the injury, Hargrove was examined by a series of doctors, none of whom could find anything physically wrong with Hargrove’s eye, but who could not explain his vision loss. Har-grove was unable to work during the time that he was being seen by these different physicians.
In addressing claims of mental disorders associated with a work-related injury, this court has written:
“We recognize the possible difficulty of establishing the existence of or the precipitating cause of any neurosis or psychic disorder. We recognize that there is a distinct possibility of attempted malingering in the absence of objective symptoms. We believe, however, that the difficulty of proof may be overcome by use of expert medical testimony and/or objective evidence. We also believe that malingering will be minimized by the vigilance of a discerning trial judge.”
Fruehauf Corp., supra, 360 So.2d at 1001.
We conclude that the trial court erred in denying workers’ compensation benefits, and we find that Hargrove presented evidence establishing a causal link between the September 14,1992, on-the-job injury and his subsequent vision loss. As to medical causa *292 tion, the test is not whether the on-the-job injury was the sole factor, but whether the injury was a factor contributing to Har-grove’s mental illness. Ex parte Trinity Industries, Inc., supra. Hargrove’s wife testified that he did not drive and that she had to drive him to his doctor visits or pay someone to drive him when she was unavailable. Surveillance of Hargrove, initiated by M & D, did not show Hargrove driving or engaging in any extra-curricular activities. Although Hargrove had suffered some emotional traumas after his injury, medical testimony shows that the September 1992 injury could have triggered his mental illness. See Gold Kist, Inc. v. Pope, 539 So.2d 291 (AIa.Civ.App.1988). Accordingly, the judgment is reversed and the case is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, J., concur.
CRAWLEY and THOMPSON, JJ., ' dissent.

. "Amblyopia — Unilateral decreased visual acuity without detectable organic disease of the eye.” See Stedman’s Medical Dictionary (25th ed.1991).