HOOPER, Chief Justice
(dissenting).
I must respectfully dissent. I have two concerns about this petition. First, I must explain the facts as the petitioner, Earth-grains, Inc., has presented them.
Larry Chatman began work at an Earth-grains facility in 1992. He began work with a 30% disability rating resulting from a crush injury to his left hand, an injury he had received while in military service. While he worked at Earthgrains, he also worked as a postal worker for the United States Postal Service. In November 1993, Chatman claimed to have suffered an inju *638 ry to his right shoulder while on the job at Earthgrains. On June 10, 1996, Chatman filed a complaint seeking compensation for a June 8, 1994, injury to his right shoulder, which required surgery. He later amended the complaint, withdrawing the claim as to the shoulder and claiming for an injury to his right elbow and an aggravation of a previous injury to his left hand. Chatman had previously injured his hand in the military service in 1977.
On June 11, 1996, Earthgrains asserts, Chatman and Earthgrains settled the workers’ compensation claim. Therefore, Earthgrains filed a motion to dismiss the complaint on July 2, 1996. On October 10, 1996, the trial judge denied the motion to dismiss. On May 22, 1997, Chatman filed an amendment to the complaint, adding two counts that alleged a repetitive-motion injury to his left upper arm with an onset of September 1996 and swelling of his right elbow that occurred on or about October 14, 15, and 16, 1996. Chatman later testified that the elbow injury occurred on October 17,1996.
On October 14, 1996, Chatman visited Dr. Decker regarding his left-hand injury. Dr. Decker recommended that Chatman go back to his military doctor for problems with the left hand. Dr. Decker noted that there appeared to be no difference in Chatman’s left hand from a July 27, 1992, visit. Dr. Decker recommended that Chatman be placed on restricted duty at Earthgrains.
On October 24, 1996, Chatman returned to Dr. Decker and requested a two-month medical leave because of problems with his left hand. Dr. Decker placed Chatman on a medical leave of absence from October 24 until December 24. Chatman did not on October 24, 1996, report an October 17, 1996, right-elbow injury. Chatman was referred to Dr. Masear for consultation, but did not report to Dr. Masear any problem with his right elbow.
On November 5, 1996, Chatman returned to Dr. Decker, claiming that he had suffered an injury to his right elbow when he opened a freezer door at Earthgrains on October 17, 1996. On November 5, 1996, Chatman reported to Dr. Decker that he was still working at the post office, delivering mail on weekends. Dr. Decker questioned Chatman’s ability to deliver mail while he was on a medical leave from Earthgrains because of his left-hand injury. Dr. Decker testified that Chatman’s right-elbow complaints were compatible with his job duties as a mail carrier, duties that required flexion and repetitive motion of both upper extremities. Dr. Decker diagnosed inflammation of the insertion of the tendons on the lateral epicondyle (right elbow) and stated: “He was out on leave at this point. Therefore, I didn’t give him any restriction.”
On December 17, 1996, Chatman returned to Dr. Decker, complaining of right-shoulder and right-elbow pain. The doctor stated in his deposition: “I felt his previous right-shoulder condition, his chronic pain, was still present, and this elbow condition appeared to be a problem for him.” On January 3, 1997, Chatman returned to Dr. Decker for a follow-up visit regarding his right elbow, and on that visit he reported that he was still delivering mail. Dr. Decker advised him to not deliver mail, because he was on medical leave from Earthgrains.
On April 7, 1997, Dr. Sammons performed surgery on Chatman’s right elbow. He later assigned Chatman a 2% permanent medical impairment to his right-upper extremity, or a 1% permanent medical impairment to his body as a whole, for the elbow injury. On September 30, 1997, Chatman reported to Dr. Decker that he was still unable to work. Dr. Decker noted that Chatman had not worked at Ear-thgrains since October 24, 1996, and in his deposition stated:
“[Chatman] has worsening of his neuro-pathy in his left hand.... He has obvious atrophy in the left hand and arm— forearm proximal muscles. Could not oppose his thumb and fifth finger. I felt *639 he did have neuropathy in the left arm and hand as before ... and felt he should never return to his previous vocation i.e., the bakery and/or postal service .... ”
On February 12, 1998, the trial court held a final hearing. On April 6, 1998, the trial court found Chatman’s claim for aggravation to his left-hand injury to be non-compensable because, the court found, the impairment rating to his left hand had increased only marginally from the impairment rating the military had given him and because Chatman’s postal work had “involved extensive flexion and repetitive motion.” However, the trial court awarded Chatman workers’ compensation benefits for the October 17, 1996, right-elbow injury. The court stated that while there had been no testimony about Chatman’s loss of earning capacity, the court, considering the physical impairment rating assigned by Dr. Sammons, concluded that Chatman had suffered a loss of earning capacity of 10% arising out of the right-elbow injury. The trial court awarded temporary-total-disability benefits for the period October 17, 1996, through July 14, 1997, when Dr. Sammons found the right-elbow injury to be at the level of maximum medical improvement.
The trial judge’s decision as to the left-hand injury was supported by medical testimony from Dr. Decker and Dr. Masear. The question on appeal before the Court of Civil Appeals, and which Earthgrains raises in its petition for certiorari review, is whether the injury resulted in a period of temporary total disability and whether the injury produced a 10% loss of earning capacity. It appears Chatman did not present substantial evidence indicating that it did.
The evidence supports Dr. Decker’s action in placing Chatman on medical leave for the left-hand injury but not the right-elbow injury; that second injury was something Chatman did not even mention to Dr. Decker until November 5, 1996. Yet, the trial court ordered temporary disability benefits for the right-elbow injury, beginning October 17, 1996. The medical leave ordered by Dr. Decker was for the left-hand injury. In addition, Chatman continued working at his job as a mail carrier even after he had complained about the right elbow and even after Dr. Decker had placed him on medical leave. The evidence is not only scant, but contradictory as well. Therefore, the least this Court should do is examine the record to determine whether Chatman actually presented substantial evidence supporting his claim.
The evidence I have summarized above, which was presented in Earthgrains’ brief, does not support the trial court’s award. I have been concerned for some time about the accumulating precedents in this area of our law. See, for example, my dissenting opinion in Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996). Nevertheless, the standard for proving-medical causation stated in Trinity Industries still stands:
“In determining whether substantial evidence was produced at trial as to medical causation, we must look to see whether ‘evidence [was produced at trial] of such weight and quality that fair-minded persons in the exercise of impartial judgment [could] reasonably infer that the risk or danger proven to have existed ‘was in fact [a] contributing cause of the injury.’ ”
680 So.2d at 269.
Based on the evidence summarized in Earthgrains’ certiorari petition and its brief, one might fairly conclude that Chat-man did not present substantial evidence on the element of medical causation. We should review this case. I dissent from the order denying review.