MONROE, Judge.
This is a workers’ compensation case.
*1199 On April 25, 1997, Brenda Ridlespurge[1] filed a complaint in the Circuit Court of Etowah County, alleging that she had sustained injuries to various body parts while working within the line and scope of her employment with Kmart Corporation. She also alleged that she subsequently developed fibromyalgia as a result of the on-the-job accident. Following a trial, the circuit court entered a final judgment on October 20, 1999, finding that Ridlespurge had a loss of earning capacity of 40% and awarding her permanent-partial-disability benefits and the right to future medical benefits for the injury to her right shoulder. However, the trial court concluded that injuries to Ridlespurge’s left shoulder and back, as well as her fibromyalgia, were not compensable under the Workers’ Compensation Act (hereinafter “the Act”). On November 12, 1999, Ridlespurge filed a postjudgment motion, which the trial court denied. Ridlespurge appeals, alleging that the trial court erred in finding 1) that her fibromyalgia is not compensable; 2) that her back injury is not compensable; and 3) that she is not permanently and totally disabled.
A review of the record indicates the following facts:
Ridlespurge is a 47-year-old woman with an 8th grade education. At the time of the accident at issue, she was employed by Kmart as a manager in the electronics department. On May 30, 1995, while Ri-dlespurge was turning on the televisions in her department, a shelf holding a combination TV/VCR fell and struck her on the right shoulder. Ridlespurge supported the shelf and TV/VCR until help arrived several minutes later. Ridlespurge promptly filled out an accident report but sought no medical treatment at that time, performing her job normally for the remaining seven months of 1995.
On November 27, 1995, Ridlespurge applied for a part-time position at Dollar Tree Stores, Inc., acknowledging in her application that she was capable of performing the following job duties without limitation: “Able to unload stock from truck (max. wt. 50 lbs.) lifting shoulder to ground — ground to shoulder. Using box cutter, stocking, pricing, climbing ladder, vacuuming, dusting, register operation, assisting customers, and general maintenance of store.” On the same application, she also affirmed that she had no physical limitations that precluded her from performing certain jobs. At trial, Ridles-purge testified that she worked at a Dollar Tree store through the holiday season in addition to her job at Kmart, but that she performed only cashier duties at the Dollar Tree store.
On January 4, 1996, Ridlespurge sought medical treatment for the first time in relation to the May 30, 1995, accident, when she went to the emergency room complaining of neck and shoulder pain. She was referred to Dr. William Stewart, an orthopedic surgeon, who subsequently performed an arthroscopic surgery and a closed manipulation on her right shoulder. After requesting another doctor, Ridles-purge went to Dr. James Flanagan, an orthopedic surgeon, who performed a second arthroscopic surgery on her right shoulder. Dr. Flanagan also performed on Ridlespurge a third surgery, known as a Mumford procedure, in which a portion of her collarbone was removed in an effort to remedy her shoulder pain. When Ridles-purge continued to experience pain, Dr. Flanagan began to suspect fibromyalgia[2] *1200 and referred her to Dr. Douglas Bell, a rheumatologist specializing in musculoskel-etal diseases. After examining her and performing several tests, Dr. Bell diagnosed Ridlespurge with fibromyalgia secondary to the May 30, 1995, on-the-job accident.
In his deposition, Dr. Bell described fi-bromyalgia as being “in some sense a diagnosis of exclusion.” When asked to explain the causes of fibromyalgia, Dr. Bell stated:
“It’s hard to say exactly what causes it. I can sort of illustrate by some [anecdotal] experience, but it’s really hard to say exactly what it is.... [A] sleep disturbance can set it off, ... decondition-ing can contribute to it, and stress can contribute to it.”
Dr. Flanagan stated that fibromyalgia is a problem that can be seen in people who have had multiple surgical procedures, but that it also occurs in people who have not had surgery. Dr. Roland Rivard, who performed an independent medical examination on Ridlespurge, testified in his deposition that fibromyalgia is often related to emotional or psychological disorders and that the condition is recognized by some doctors, but not by others.
Dr. Bell based his diagnosis of secondary fibromyalgia on the history given to him by Ridlespurge. At that time, he was unaware that she and her husband had been indicted in December 1997 for trafficking in methamphetamines and for unlawful possession of controlled substances. This indictment preceded her diagnosis of fibromyalgia in 1998. Dr. Bell testified that, without knowing the specifics, he thought that such an event would certainly qualify as the kind of stressor that could trigger fibromyalgia. Nevertheless, he also testified that he assumed that the condition had existed “for quite some time” and that being unable to perform job and family activities would also be stressful.
On December 25, 1996, approximately one year and seven months after her on-the-job accident, Ridlespurge went to an emergency room complaining of low-back pain. Ridlespurge related the back pain to her May 30, 1995, accident. The accident report completed on the date of the accident reflects an injury to her lower back. However, the medical records from the emergency-room visit indicate that she had experienced back pain since “yesterday” and that her “back went out” when she turned to the right while standing. Dr. Flanagan then referred Ridlespurge to Dr. Zenko Hrynkiw, a neurosurgeon, for treatment of her back problems. After examining Ridlespurge, Dr. Hrynkiw informed the nurse case manager for Ridlespurge’s workers’ compensation claim that her back condition did not directly relate to her on-the-job injury.
After examining Ridlespurge on September 24, 1998, in order to estimate her partial permanent impairment and work restrictions, Dr. Rivard found her to have an impairment rating of 16% of the upper extremity and 10% of the whole person. He recommended no work restrictions for standing, walking, sitting, climbing stairs, balancing, stooping, kneeling, crouching, squatting, handling, and fingering. As to lifting, he recommended a maximum lift of 38 pounds and a maximum frequent lift of 10 pounds, placing Ridlespurge in the Dictionary of Occupational Titles lifting category of “light.” Claude Peacock, Ridles-purge’s vocational expert, testified at trial that Ridlespurge was 100% vocationally disabled at the time he evaluated her on January 27, 1999. In contrast, Sharon Leader, Kmart’s vocational expert, testified that Ridlespurge had no vocational disability. Leader felt that Ridlespurge “could work as a cashier, a cashier supervi *1201 sor, cash-cage worker, or customer service clerk.” Leader did not consider Ridles-purge’s pain in making her vocational evaluation.
Ridlespurge testified that she is in severe pain all the time. She described the effect of the pain on her life as follows:
“Q ... Tell us about the pain and how that [a]ffects your life and how it has [a]ffected — is [a]ffecting your life.
“A Well, when I get up I have to— when I get dressed I have to rest before I do anything else. And then when I do anything else then I have to rest because I’m exhausted and the muscles and the pain hurts so bad I can’t stand it.
“Q How did it [a]ffect [your] coming up in the courthouse today?
“A It — I’m exhausted.
“Q All right. What about the knotting and the spasms?
“A They’re knotted up, my legs, and my neck and my shoulders.
“Q Have you always been an active person, able to do almost anything you wanted to do prior to this?
“A Yes, sir.
“Q Lift TV’s, help move appliances, all that kind of thing?
“A Yes, sir.
“Q All right. How has this [a]ffected your life and your ability to earn a living?
“A Excuse me? I’m sorry, I can’t do anything anymore.
“Q Can you hold out to do anything? Do you have the strength to do anything?
“A No, sir.”
Dr. Rivard testified in his deposition that Ridlespurge’s reports of pain were consistent with the medical findings. He further testified that pain could affect her work restrictions and that, depending on the kind taken, pain medication could either improve or impair her ability to be active.
When reviewing pure findings of fact under the Act, this Court shall not reverse the findings of the trial court if those findings are supported by substantial evidence. § 25 — 5—81(e)(2), Ala.Code 1975; Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996). “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Trinity, 680 So.2d at 268. Moreover, we must be ever mindful that the Act is to be liberally construed to accomplish its beneficent purposes and that doubts must be resolved in favor of the employee. Holmes v. Gold Kist, Inc., 673 So.2d 449 (Ala.Civ.App.1995).
We conclude that the record does not contain substantial evidence to support the trial court’s determination that Ridles-purge’s fibromyalgia is not compensable under the Act. For an employee’s injury to be compensable under the Act, it must be “caused by an accident arising out of and in the course of his or her employment.” § 25-5-51, Ala.Code 1975; Edwards v. Blue Mountain Indus., 627 So.2d 450, 451 (Ala.Civ.App.1993). The phrase “arising out of’ requires a causal relationship between the injury and the employment. Morell v. Tennessee Valley Press, Inc., 716 So.2d 1282, 1286 (Ala.Civ.App.1998). Thus, to receive workers’ compensation benefits, an employee must prove both legal and medical causation. Id. In accidental-injury cases, where the employee was injured by a sudden and traumatic external event, he or she must produce substantial evidence tending to show that the alleged accident occurred in order to prove legal causation. Trinity, 680 So.2d *1202 at 266 n. 3; see also Morell, 716 So.2d at 1286 (stating that “[a]n injury does not become ‘nonaceidental’ just because the ultimate injury at issue ... occurred a few months after the incident or could have been caused by factors unrelated to employment”). Medical causation is met by demonstrating that the accident was a contributing cause of the complained-of injuries and complications. Trinity, 680 So.2d at 266 n. 3.
Ridlespurge clearly met the standard for legal causation for an accidental injury, because the parties do not dispute that the May 30, 1996, accident occurred. We find that Ridlespurge has also presented substantial evidence showing medical causation as to her fibromyalgia. Dr. Bell testified that “based on the information that [he had] available, ... it’s a reasonable conclusion to draw that her fibromyalgia is related to the injury.” Although Kmart presented the stress of Ridlespurge’s indictment as a possible alternative cause of her fibromyalgia, the record does not show substantial evidence indicating that the indictment, rather than the May 30, 1996, injury, was the cause of the fibromyalgia. While Dr. Bell stated that pending criminal charges could qualify as the kind of stressor that might trigger fibromyalgia, he also stated that he assumed that the condition had existed “for quite some time,” thus indicating that the condition predated the indictment. Dr. Bell also agreed that an inability to perform family and job duties could cause stress.
Thus, the evidence merely presents the indictment as one possible factor contributing to Ridlespurge’s fibromyalgia, and it in no way eliminates the on-the-job injury as a possible cause. Rather, based on the evidence as a whole, it is possible that a number of factors contributed to the development of Ridlespurge’s fibromyalgia. As Dr. Bell’s deposition testimony indicates, it is unclear what causes fibromyalgia, and there are a number of factors that may lead to the condition. Under the applicable standard for medical causation, Ridles-purge need only prove that the on-the-job injury was a contributing cause of the fi-bromyalgia. Trinity, 680 So.2d at 270; Hargrove v. M & D Mechanical Contractors, Inc., 725 So.2d 287, 291-92 (Ala.Civ.App.1997), rev’d on other grounds, 725 So.2d 292 (Ala.1998). She is not required to prove that the on-the-job injury was the sole cause of the condition. Id. We find that Ridlespurge has presented substantial evidence showing that the on-the-job injury at least contributed to the development of her fibromyalgia. Therefore, we hold that the trial court erred in finding that Ridlespurge’s fibromyalgia was not com-pensable under the Act.
Conversely, using the same analysis, we find substantial evidence to support the trial court’s determination that Ridles-purge’s back condition is not compensable under the Act. Although she did note an injury to her lower back in the report of her May 30, 1995, accident, Ridlespurge did not seek medical attention for back problems until December 25, 1996, one year and seven months after the on-the-job accident. Furthermore, her medical records from that emergency-room visit indicate that she had experienced pain in her back since “yesterday,” when she was standing and turned to the right. Furthermore, Dr. Hrynkiw indicated that Ri-dlespurge’s back condition was not related to her on-the-job accident. In fact, Ridles-purge presented no medical testimony connecting her back condition to the on-the-job accident. Therefore, Ridlespurge has failed to meet the standard for medical causation as to her back condition, and we concludé that substantial evidence supports the trial court’s determination that *1203 her back condition is not compensable under the Act.
Finally, we hold that the trial court erred in finding that Ridlespurge is not permanently and totally disabled and in setting her loss of earning capacity at only 40%. In Ivie v. Winfield, Carraway Hosp., this Court explained the discretion given to trial courts in determining the extent of a claimant’s disability:
“[T]he trial court, which has the duty of determining the extent of one’s disability, is not bound by expert testimony, but must consider all of the evidence before it, including its own observations, and interpret it to its own best judgment. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988). Moreover, the trial court is free to choose which evidence it believes, and when conflicting evidence is presented, the findings of the trial court are conclusive, if supported by the evidence. Acustar, Inc. v. Staples, 598 So.2d 943 (Ala.Civ.App.1992). Also, the determination of the extent of the disability is a discretionary function of the trial court, and its determination will not be disturbed on appeal if there is evidence to support it. M.C. Dixon Lumber Co. v. Phillips, 642 So.2d 477 (Ala.Civ.App.1994).”
678 So.2d 1190, 1193 (Ala.Civ.App.1996).
We conclude that the trial court’s finding as to the percentage of Ridlespurge’s loss of earning capacity is not supported by the evidence in this case. Ridles-purge’s contention that she is permanently and totally disabled is based, in large part, upon her complaints of chronic pain. Dr. Rivard testified that Ridlespurge’s reports of pain were consistent with the medical findings. Because pain is a subjective complaint, its effect upon her ability to sustain meaningful employment would most likely not be reflected in the tests performed by Dr. Rivard and the vocational evaluations of the parties’ experts. Therefore, we conclude that the record does not contain substantial evidence to support the trial court’s finding that Ri-dlespurge was not permanently and totally disabled, and the trial court erred in making that finding.
Based on the foregoing, we affirm the judgment insofar as it relates to the com-pensability of Ridlespurge’s back condition. However, it is reversed insofar as it relates to the compensability of Ridles-purge’s fibromyalgia and insofar as it determines the degree of her loss of earning capacity.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result.
CRAWLEY and THOMPSON, JJ„ concur in part and dissent in part.

. Some documents in the record carry the plaintiffs signature as "Brenda Ridlespurge.” Other documents, including the notice of appeal, spell her last name as "RkMespurge.”

. Fibromyalgia is an affliction in which inflammation of the muscles and the fibrous covering of the muscles causes chronic pain.