Leon Gibbons sued Shaddix Pulpwood Company, seeking to recover workers' compensation benefits for an on-the-job injury to his back that he claims left him permanently disabled. After an ore tenus hearing, the trial court entered a judgment finding that Gibbons had a 10% physical impairment rating and ordering Shaddix to pay for Gibbons's future medical expenses arising from the work-related injury. *Page 226 
In its judgment, the trial court found that Gibbons had voluntarily left his job with Shaddix and moved to South Carolina, where he took a job earning at least $100 a week more than he had earned with Shaddix. The trial court also found Gibbons was "not a permanent total candidate." Gibbons appeals.
The evidence adduced at trial tended to show the following. On December 24, 1993, while Gibbons was working as a laborer for Shaddix, he injured his back. The parties stipulated that his average weekly wage at that time was $146.32. Shaddix paid Gibbons temporary total disability benefits for one year and paid the medical expenses related to his back injury.
In March 1994, three months after his accident, Gibbons had surgery for his back injury. In May 1994, without giving any notice to Shaddix, Gibbons voluntarily left his job with Shaddix and moved to South Carolina, where his wife and children lived.
In South Carolina, Gibbons began seeing Dr. David B. Kee for treatment of his back injury. Gibbons reached maximum medical improvement in January 1995, and Dr. Kee assigned Gibbons a 10% physical impairment rating. Gibbons then underwent a "Functional Capacities Evaluation" at Beach Rehabilitation and Injury Center in South Carolina; it showed that he could perform light-duty work.
In February 1996, Gibbons got a job with Carolina Southern Railroad, earning $260 a week. While working at Shaddix, Gibbons had earned $146 a week. In July 1996, he suffered a stroke that has left him unable to work. He testified several times that he would like to return to work for the railroad, but that he could not because of problems caused by the stroke. He did not mention being unable to work because of his back injury.
Because Gibbons's injury occurred on December 24, 1993, the new Workers' Compensation Act applies. The standard of review this court must apply in cases under the new Act is derived from § 25-5-81(e)(1), Ala. Code 1975, which provides: "In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness." Furthermore, the new Act provides that "in reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." § 25-5-81(e)(2). The Alabama Supreme Court has defined "substantial evidence" as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co., 547 So.2d 870, 871 (Ala. 1989); Ex parteTrinity Industries, Inc., 680 So.2d 262, 268 (Ala. 1996).
Gibbons contends that the trial court erred in applying §25-5-57(a)(3)i., Ala. Code 1975, the return-to-work provision of the Workers' Compensation Act. He seems to argue that because he moved to South Carolina for what he believes are good reasons, the provision does not apply to him. Therefore, he says, the trial court should have allowed evidence of his vocational disability.
Section 25-5-57(a)(3)i. reads as follows:
 "i. Return to Work — If, on or after the date of maximum medical improvement, except for scheduled injuries as provided in Section 25-5-57(a)(3), an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability."
The statute clearly applies in this case. Gibbons's injury involves his back, which is not a scheduled member. Thirteen months after reaching maximum medical improvement, Gibbons began working for $114 more a week than he had earned at Shaddix. Gibbons apparently argues that he fits within a provision of the statute that he claims exempts him from the statute, i.e.:
 "Notwithstanding the foregoing, if the employee has lost his or her employment under circumstances other than any of the following within a period of time not to exceed 300 weeks from the date of injury, an employee may petition a court within two years thereof for reconsideration of his or her permanent partial disability rating: *Page 227 
". . . .
 "(ii) The loss of employment is voluntary, without good cause connected with such work."
§ 25-5-57(a)(3)i.(ii), Ala. Code 1975, (emphasis added).
We note that Shaddix does not cite any authority in support of his argument that he left his job at Shaddix for good cause. Because we could find no authority on point, we will address the substance of Gibbons's argument.
Gibbons says that he had three "good reasons" for leaving his job with Shaddix. First, he says, he is limited to light-duty work and therefore, could not return to his job at Shaddix. This "good reason" is inadequate for at least two reasons. Gibbons left his job with Shaddix in May 1994, five months after his injury. At that time, he had not yet reached maximum medical improvement and he had not yet taken his "functional capacities evaluation;" therefore when he left Shaddix, he did not know he was limited to light-duty work. Furthermore, because Gibbons never told Shaddix he was leaving his job, he never gave the company a chance to move him to a job Gibbons thought he was physically capable of doing. In fact, Gibbons testified that he never discussed with Shaddix the possibility of moving to a different job.
His second "good reason" is that he still has back pain and therefore cannot perform his old job. This "good reason" has nothing to do with why he left Shaddix without notice five months after the injury.
His third "good reason" is that he "no longer resides in the state of Alabama." He said that after his back injury, he had to move back to his family for financial reasons and because he wanted to be reunited with his family. The statute precludes a reconsideration of an employee's permanent partial disability rating if the "loss of employment was voluntary, without good cause connected with such work." § 25-5-57(a)(3)i.(ii), Ala. Code 1975, (emphasis added). Leaving his job with Shaddix to move to another state is not a reason "connected with such work."
Boiled down, the evidence indicates that Gibbons voluntarily left Shaddix with no notice and that after reaching maximum medical improvement, he went to work at a much higher-paying job. Therefore, the trial court acted properly in not considering evidence of Gibbons's vocational disability. This court sympathizes with Gibbons's plight of suffering a stroke that has apparently left him unable to work. However, we will not require Shaddix Pulpwood to shoulder any financial burden beyond that which was caused by the injury Gibbons suffered while he was working for Shaddix.
By arguing that the return-to-work statute does not apply to him, Gibbons attempts to stretch the limits of the statute beyond the boundary of common sense. That argument is not supported by any legal authority. We will not hold the trial court in error for assigning Gibbons a 10% impairment rating.
Gibbons also says that § 25-5-57(a)(3)i. does not apply to cases involving permanent and total disabilities, and, he says, he had an expert witness prepared to testify that he was permanently and totally disabled. The date of his expert's evaluation was April 24, 1995, some 10 months before Gibbons began working at Carolina Southern for $114 more a week than he was earning at Shaddix. Obviously, Gibbons was not permanently and totally disabled. The trial court did not err in applying §25-5-57(a)(3)i.
Last, Gibbons argues that § 25-5-57(a)(3)i. is unconstitutional. He makes this argument for the first time on appeal. It is well settled that appellate courts will not consider issues raised for the first time on appeal. Andrews v.Merritt Oil Co., 612 So.2d 409 (Ala. 1992); Owens v. NationalBank of Commerce, 608 So.2d 390 (Ala. 1992).
The trial court's findings of fact are supported by substantial evidence. Furthermore, the trial court did not err in applying § 25-5-57(a)(3)i. in this case. The judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur. *Page 228