WRIGHT, Retired Appellate Judge.
Melissa Green sued Golden Poultry Company, Inc. (“Golden Poultry”), seeking workers’ compensation benefits. Following ore tenus proceedings, the trial court determined that Green was not entitled to benefits. Green appeals.
The standard of review in a workers’ compensation case was stated by our supreme court in Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996):
“[W]e will not reverse the trial court’s finding of fact if that finding is supported by substantial evidence — -if that finding is supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
680 So.2d at 268-69 (quoting West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989)).
The record reveals the following pertinent facts: Green, who was 44 years old when the case was tried, completed the eighth grade and has been employed in the unskilled labor force most of her work life. In September 1992, she began working for Golden Poultry as a trimmer. A trimmer is responsible for jerking the thigh bone away from the chicken and cutting the bone out of the thigh. The chickens are on a moving belt, and each trimmer must trim every third chicken. The belt moves quickly, and the trimmer must reach up with his or her left arm to shoulder level and jerk the thigh from the body. After removing the thigh, the trimmer uses scissors to cut away the knuckle and cartilage from the thigh before throwing the thigh on the belt. Green held scissors in her right hand at all times and used her left arm to jerk the chicken and throw the thigh on the belt. Green’s job required her to stand and lean over the chickens as she trimmed the thighs. Her head was held in a downward position at all times during her eight-hour shift. According to Green’s supervisor, Matt Scog-gins, Green would trim approximately ten birds a minute on an eight-hour shift. Scoggins testified that it was not uncommon for employees from the trimming department to complain of aches and pains.
By March 1995, Green had begun to experience severe pain in her neck and left shoulder. On March 13,1995, Green experienced a cold sensation, numbness, and discoloration in her left hand, which prompted her to report these symptoms to her supervisor. Green testified that she never had problems with her neck or hands prior to working for Golden Poultry.
The night she reported her symptoms with her hand, Green went to the emergency room. The doctor took her off work for ten days. Dr. Edward Fisher became Green’s treating physician. On June 6, 1995, Dr. Fisher noted, “[s]he appears to be suffering from a chronic inflammatory process that causes pain and is secondarily aggravated by her activities at work.” Dr. Fisher subsequently determined that Green suffered from herniated discs at the C5-6 and C6-7 levels. In July 1995, he returned Green to work, with the following restrictions: no lifting over 20 pounds, no overhead activities, and no carrying above 20 pounds.
Green returned to work on light-duty status for approximately seven months and was moved from job to job because she was not physically able to perform the tasks. By October 1995, the pain was so *1174 severe that Green was instructed to take medical leave.
In January 1996, Dr. Michael McNamara performed an anterior diskectomy. Green continues to seek medical treatment from Dr. David Longmire, a neurologist, for her neck, her shoulder, and her hands. She continues to take Darvocet, Xanex, Synflex, and antidepressants. Dr. Long-mire referred Green to Dr. Guy Walker, a licensed professional counselor, for treatment of her psychological symptoms arising from the severe pain. Dr. Walker opined that because of Green’s physical and psychological conditions, Green would not be able to work in the future.
In 1998, because she was suffering from neck pain, Green returned to Dr. Fisher. In his medical notes, Dr. Fisher stated that Green had degenerative disc disease that was not a result of her work activities. He opined that her condition was
“in no way related to her activities at work at Golden Poultry. The cause of her bulging discs which resulted in her surgery is underlying natural progression of degenerative disease and is not a result of any work activities. Although, her work at Golden Poultry may have temporarily exacerbated the symptoms associated with her degenerative disc disease in her neck.”
The trial court specifically found that the “cause of [Green’s] ‘central herniated C5-6 and C6-7 discs,’ which resulted in her anterior diskectomy and fusion performed by Dr. McNamara, is a result of degenerative disc disease and not a result of any work-related activities.” The Workers’ Compensation Act is to be liberally construed in order to effectuate the beneficent purposes of the act. Cagle v. Brock & Blevins, Inc., 723 So.2d 65 (Ala. Civ.App.1998). It is not limited to those in perfect health. If the employment aggravates, accelerates, or combines with a latent disease or infirmity to produce disability, the pre-existing disability does not disqualify the employee’s claim under the “proximate cause” requirement of the Act. Cagle.
Based upon our review of the record, we conclude that the trial court applied an erroneous standard to the facts to determine causation. The trial court failed to consider whether Green’s work activities aggravated or exacerbated a pre-exist-ing condition. Ex parte Cash, 624 So.2d 576 (Ala.1993); Cagle; Holmes v. Gold Kist, Inc., 673 So.2d 449 (Ala.Civ.App. 1995).
Accordingly, the judgment of the trial court is reversed and this cause is remanded for the determination of the degree of Green’s disability.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active-duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., dissent.