MURDOCK, Judge.
Henry Whisenant, Sr., filed a complaint in the Etowah Circuit Court against By-num Stockyard and other fictitiously named defendants, seeking workers’ compensation benefits for an injury he allegedly suffered to his right shoulder on April 24, 1999. Bynum Stockyard answered the complaint, denying the allegations and asserting affirmative defenses. Whisenant amended his complaint on January 3, 2001, substituting the correct legal name of the defendant, Bynum and Livestock Commission Company, Inc., for Bynum Stockyard, and adding a claim for wrongful termination. Bynum and Livestock Commission Company, Inc. (“Bynum”), answered the amended complaint, denying the material allegations and asserting several affirmative defenses.
An ore tenus proceeding was held on October 2, 2001. At the beginning of the proceeding, the parties stipulated to a number of relevant facts, including that “Whisenant got injured while working for ... Bynum.” The parties also stipulated that the issues before the trial court were (1) “the extent of [Whisenant’s] disability,” and (2) the determination of the average weekly wage.
The trial court entered a judgment on February 1, 2002, finding, among other things, that Whisenant suffered a 70% permanent partial disability as a result of his injury and awarding Whisenant temporary total and permanent partial disability benefits based on an average weekly wage of $150. Regarding the average weekly wage, the trial court’s judgment states, in pertinent part:
“[Tjhere was no dispute as to the fact that [Whisenant] worked for [Bynum] for 28 to 31 days per year as [Whisen-ant] was directed to work by [Bynum] and earned a total of $1,000 per year. Because the § 25-5-57(b)[, Ala.Code 1975,] formula for determining average weekly earnings cannot be applied in this particular case, ‘the determination of the average weekly wage is “left to the sound judgment and judicial discretion of the trial court.” ’ Ex parte Fryfogle, 742 So.2d 1258, 1261 (Ala.1999). Here, dividing the $1000.00 per year payment by the days [Whisenant] worked establishes that [Whisenant] had an average weekly earning of $150.00 per week.
*455 “... [Whisenant] worked for [Bynum] for the past 12 to 15 years. [Whisenant] helped build the barn for [Bynum’s] horses, and for the last couple of years [Whisenant] helped [Bynum] with the sales of the horses. [Whisenant] opened and closed the gate in the sale ring, he also helped put the horses in the ring and put horses that came in during the sale in pens.”
Bynum appeals.[1]
Bynum contends that the trial court erred in determining Whisenant’s average weekly wage to be $150. Bynum contends that an average weekly wage of $150 is not supported by substantial evidence and that a reasonable view of the evidence supports an average weekly wage of $38.46. Although Whisenant did not file a cross-appeal, Whisenant essentially agrees with Bynum that an average weekly wage of $150 is not supported by substantial evidence; however, Whisenant argues that his average weekly wage was $327.85.
Bynum argues that the average weekly wage should be determined by dividing $1,000 by 26 weeks, resulting in the aforementioned $38.46.[2] Bynum reasons that Whisenant’s $1,000 yearly earnings should be divided by 26 weeks instead of 52 weeks because, it says, Whisenant worked “every other week” and not “every week” in his capacity as an employee of Bynum.
Whisenant argues that an average weekly wage of $327.85 should be calculated as follows: $232.56 ($1,000 divided by 4.3 weeks) plus $95.29 ($4,954.91 for additional mechanic work[3] divided by 52 weeks). Whisenant reasons that $1,000 should be divided by “4.3 weeks in a month,” apparently contending that the 28 to 31 days he was employed by Bynum during the year before his injury amounted to approximately 4.3 weeks of work.
The record reveals the following facts regarding Whisenant’s average weekly wage. Bynum is in the business of selling livestock, including horses, mules, and goats. Whisenant began his employment with Bynum in the 1980s as a gate tender. During the 52 weeks preceding the work-related injury, Whisenant earned $1,000 as a gate tender for Bynum. Whisenant’s job duties as a gate tender included opening and closing the gate at the stockyard for the sale of horses and livestock; Whisen-ant also handled the horses during the sales. Whisenant testified that he worked the second Monday and the fourth Saturday of each month; he also worked the fifth Saturday of those months having a fifth Saturday. Whisenant also worked two additional days twice a year for a special sale.[4]
Whisenant also owned and operated an automobile-mechanic shop, located at his residence, during the period of time he was employed by Bynum. Whisenant and his employees would perform mechanic work, including tune-ups and oil changes *456 at the shop. Whisenant (or an employee of Whisenant) also performed work on equipment and vehicles for Bynum. Whi-senant testified that he performed work for Bynum at the automobile-mechanic shop and, at times, on-site (as far away as Mississippi). During the 52 weeks preceding the work-related injury, Bynum paid Whisenant $4,954.91 for mechanic work.
Whisenant prepared separate invoices for the mechanic work he performed for his customers (including Bynum), and he employed a bookkeeper at the automobile-mechanic shop to maintain the invoices. Bynum paid Whisenant separately for the mechanic work. Whisenant testified that at the time he began working for Bynum as a gate tender he also agreed to perform mechanic work for Bynum. Whisenant testified that because of his relationship with Bynum, he charged Bynum a reduced rate and gave Bynum priority over other customers. Whisenant reported his earnings (for federal income tax purposes) from the automobile-mechanic shop as earnings from a sole proprietorship. Whi-senant continued to operate the automobile-mechanic shop after the work-related injury occurred until April 2001. Whisen-ant testified that he was no longer able to perform the mechanic work because of the work-related injury that occurred while he was working for Bynum.
In a workers’ compensation case,“[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” § 25-5-81(e)(2), Ala. Code 1975; Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (holding that a trial court’s finding of fact will not be reversed if that finding is supported by substantial evidence, i.e., if that finding is supported by “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved”) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Our review of legal issues shall be without a presumption of correctness; § 25-5-81(e)(l) provides that “[i]n reviewing the standard of proof set forth herein and other legal issues, review ... shall be without a presumption of correctness.”
The section of the Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975, that governs the computation of “average weekly earnings” is § 25-5-57(b), Ala. Code 1975, which provides:
“(b) Computation of compensation; determination of average weekly earnings. Compensation under this section shall be computed on the basis of the average weekly earnings. Average weekly earnings shall be based on the wages, as defined in Section 25-5-1(6) of the injured employee in the employment in which he or she was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by 52, but if the injured employee lost more than seven consecutive calendar days during the period, although not in the same week, then the earnings for the remainder of the period, although not in the same week, then the earnings for the remainder of the 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained. Where by reason of the shortness of the time during which the employee has *457 been in the employment of his or her employer or the casual nature or terms of the employment it is impracticable to compute the average weekly earnings as above defined, regard shall be had to the average weekly amount which during the 52 weeks prior to the injury was being earned by a person in the same grade, employed at the same work by the same employer, and if there is no person so employed, by a person in the same grade employed in the same class of employment in the same district. Whatever allowances of any character made to an employee in lieu of wages are specified as part of the wage contract shall be deemed a part of his or her earnings.”
(Emphasis added.)
Section 25-5-1(6), Ala.Code 1975, provides, in pertinent part:
“(6) Wages or weekly wages. The terms shall in all cases be construed to mean ‘average weekly earnings’, based on those earnings subject to federal income taxation and reportable on the Federal W-2 tax form-”
At the outset, we note that the trial court, as reflected by the findings in its judgment, properly considered only the work Whisenant performed for Bynum in his capacity as an employee of Bynum and not the work Whisenant performed for Bynum in his capacity as a sole-proprietor mechanic in determining Whisenant’s average weekly wage. The trial court’s judgment does not mention the work that Whisenant performed for Bynum in his capacity as a sole-proprietor mechanic.
Section 25-5-57(b) provides that “[average weekly earnings shall be based on the wages, as defined in Section 25-5-1(6) of the injured employee in the employment in which he or she was working at the time of the injury .... ” (Emphasis added.) In Ex parte Fryfogle, 742 So.2d 1258 (Ala.1999), our Supreme Court rejected an argument that § 25-5-57(b) required that an injured worker’s wages from a second job be included in determining the average weekly wage for the purpose of calculating the workers’ compensation benefits for which the injured worker’s primary employer was liable:
“The plain meaning of the various pertinent provisions of the Workers’ Compensation Act is that the injured employee’s ‘average weekly wage’ is calculated by using the wages earned from the employer that directed the injured employee at the time of the injury.”
Ex parte Fryfogle, 742 So.2d at 1261.
Additionally, we note that the plain language of § 25-5-1(6) provides that the “average weekly earnings” are to be “based on those earnings subject to federal income taxation and reportable on the Federal W-2 tax form.” The wages that Whisenant earned in his capacity as an employee of Bynum (i.e., the $1,000 gate-tender wages) would properly be reportable on a federal W-2 tax form reflecting Bynum as the employer and Whisenant as the employee, while the earnings Whisen-ant received in his capacity as a sole-proprietor mechanic would not be properly reportable on a federal W-2 tax form. Whisenant admitted that he operated his automobile-mechanic business as a sole proprietorship and that he, in fact, properly reported the earnings from that business as income from a sole proprietorship for federal income tax purposes.
Next, with regard to Whisenant’s average weekly wage in his employment as a gate tender for Bynum, we must conclude that the record in this case does not support a determination of a $150 average weekly wage. It is unclear how the trial court made this determination. It appears *458 that the trial court could have arrived at a figure close to $150 per week if it had treated the days Whisenant worked as an employee for Bynum over the course of a year as if those days had instead been worked consecutively during traditional work weeks, and had thus divided the total of 28 to 31 days by 5 (the number of days in a traditional work week), and had then divided the $1,000 Whisenant earned by the result (approximately 6 weeks). Such an approach, however, incorrectly treats Whisenant as if he were a full-time employee and places the same compensation burden on Bynum that it would bear in the case of a full-time employee.[5] Indeed, the inappropriateness of treating the 28 to 31 days during which the employee worked as if they were worked consecutively instead of on a regular basis throughout the 52-week period during which they were actually worked is highlighted by the fact that this would, indeed, lead in this particular case to an average weekly wage of over $150. Because an average wage of $150 per week, when multiplied by 52 weeks, would yield an annual compensation level of $7,800, we would be basing Whisenant’s workers’ compensation benefits on a compensation level almost eight times that which he actually earned while healthy and working as an employee for Bynum. Indeed, under the trial court’s determination of Whisenant’s average weekly wage, Whi-senant’s compensation benefits under the Workers’ Compensation Act, even based on a 70% permanent partial disability, would total during the course of a year many times the $1,000 yearly wage Whi-senant received when he was actually working as an employee for Bynum. Based on the particular facts presented in this case, including the fact that the work of the employee in this case was performed on a regular basis throughout the 52-week period preceding his injury, we conclude that the trial court’s determination of a $150 average weekly wage is inconsistent with § 25-5-57(b).
Based on a careful reading of § 25 — 5—57(b), we conclude that, as a general rule, that section simply contemplates a division of an employee’s wages during the 52-week period preceding his or her injury by the actual number of weeks falling within whatever portion of that 52-week period he or she was employed. Based on the fact that the employee in the present case worked as an employee for Bynum on a regular basis throughout the entire year prior to his injury, we conclude that he was an employee of Bynum for the entire 52-week period and that the first portion of the second sentence of § 25-5-57(b) is applicable:
“Average weekly earnings shall be based on the wages ... of the injured employee ... during the period of 52 weeks immediately preceding the date of the injury divided by 52.”
Applying this provision to the present case, Whisenant’s average weekly earnings should be computed by dividing “the wages” he actually earned “during the period of 52 weeks immediately preceding *459 the date of the injury,” in this case $1,000, by 52, resulting in an average weekly wage of $19.23.[6]
We acknowledge that this figure is not the figure calculated by either party; however, we point out that the crux of the argument made by both parties is that the “$150 per week” figure computed by the trial court is not supported by substantial evidence.
Based on the foregoing, we reverse the judgment of the trial court, and we remand the cause for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.

.Because the wrongful-termination claim remained pending at the time the notice of appeal was filed, this court remanded the cause to the trial court (see Foster v. Greer & Sons, Inc., 446 So.2d 605 (Ala.1984) (overruled on other grounds by Ex parte Andrews, 520 So.2d 507 (Ala.1987))) for the trial court to direct the entry of a final judgment. The trial court has complied with that directive by entering an order pursuant to Rule 54(b), Ala. R. Civ. P., and jurisdiction has now vested in this court.

. We note that at the trial counsel for Bynum stated "$35.62” instead of "$38.46.” However, Bynum corrected that mathematical error in its brief to this court.

. Bynum paid Whisenant $4,954.91 for mechanic work during the 52 weeks preceding the work-related injury (discussed infra).

. The record is unclear as to when the additional four days were worked.

. The record does not indicate that the nature of Bynum's business and the level of its business activity justified the hiring of Whisenant and/or other employees to perform the duties of a gate tender more frequently than two to three times a month. Accordingly, even if we conclude that Whisenant's employment could be considered of a “casual nature” for purposes of the fourth sentence of § 25-5-57(b) (an assumption that would be in tension with the periodic and regular nature with which Whisenant actually worked as an employee for Bynum), that sentence’s admonition that "regard shall be had to the average weekly amount which during the 52 weeks prior to the injury was being earned by a person in the same grade, employed at the same work” would not support an average weekly wage at the level determined by the trial court.

. To further illustrate, suppose Whisenant had only worked during the last half of the year prior to his injury, but had still been paid $1,000. Under the third sentence of § 25-5-57(b), which provides, in part, that ''[w]here the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed,” Whisenant’s $1,000 would be divided by 26 weeks for an average weekly wage of $38.46. However, because in this case Whisenant earned the $1,000 for regular, periodic work spread out over a 52-week period, dividing his wages by only 26 weeks would in effect yield his "average biweekly wage” during the year (i.e., $38.46), not his "average weekly wage.”