THOMPSON, Presiding Judge.
 

 In April 2002, Charles Philon sued his employer, Chadwick Timber Company (“Chadwick Timber”), seeking workers’ compensation benefits. In his complaint, Philon alleged that on March 8, 2001, he was involved in an on-the-job accident that caused him to suffer injuries to his left leg. In his complaint, Philon also alleged that “[sjubsequent to said injury ... [he] now suffers a permanent total disability of his person.” Chadwick Timber answered and denied liability.
 

 The trial court scheduled a trial of the matter for May 15, 2003, but that trial date was postponed and rescheduled several times. The trial court conducted a hearing and received ore tenus evidence on September 15, 2005. On April 13, 2006, the trial court entered a judgment finding Phi-lon to be permanently and totally disabled and awarding benefits accordingly. Chadwick Timber timely appealed.
 

 When this court reviews a trial court’s judgment in a workers’ compensation case, that judgment will not be reversed if it is based on factual findings that are supported by substantial evidence. § 25 — 5—81(e)(2), Ala.Code 1975. Our supreme court has defined substantial evidence as “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). Further, this court reviews the facts “in the light most favorable to the findings of the trial court.”
 
 Whitsett v. BAMSI, Inc.,
 
 652 So.2d 287, 290 (Ala.Civ.App.1994),
 
 overruled on other grounds, Ex parte Trinity Indus., Inc.,
 
 680 So.2d 262 (Ala.1996). This court has also concluded: “The [1992 Workers’ Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court.”
 
 Edwards v. Jesse Stutts, Inc.,
 
 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
 

 The record indicates that on March 8, 2001, Philon was involved in an on-the-job accident in which he broke his left leg. Philon testified at the trial of this matter that he also injured his lower back in the March 8, 2001, on-the-job accident. Philon was first taken to Gilbertown Family Medical Clinic and then to the hospital at the University of South Alabama (“USA”). Philon testified that he informed people at both medical facilities that he visited immediately following the accident that he had back pain. However, the medical records from those facilities document only the leg injury, and USA’s records state that Philon did not complain of any injury other than the one to his left leg.
 

 On March 9, 2001, Dr. Albert Pearsall performed surgery on Philon’s leg and inserted three screws into the broken bone. Later, in July 2001, Dr. Pearsall performed another surgery on Philon’s leg to remove two of those screws. Dr. Pearsall testified that because of the leg injury, on November 26, 2001, he determined Philon to have reached maximum medical improvement and assigned Philon a 10% medical-impairment rating. Dr. Pearsall testified that because X-rays indicated that Philon’s leg injury appeared to have healed perfectly, he based the medical-impair
 
 *1017
 
 ment rating on Philon’s continued complaints of pain. Dr. Pearsall testified that because Philon first complained of back pain shortly before he determined the medical-impairment rating, Philon’s back-pain complaints did not have any bearing on his determination of Philon’s medical-impairment rating.
 

 Dr. Pearsall testified that his first notation that Philon had complained of suffering from back pain was dated September 28, 2001. Dr. Pearsall testified that at the time Philon first mentioned his pack pain, Dr. Pearsall decided to schedule a functional capabilities evaluation (“FCE”) to determine whether, and at what level, Phi-lon could resume his employment. The next notation indicating that Philon had complained of back pain was dated October 30, 2001, approximately one week before the scheduled FCE. At the hearing, Philon testified that he had informed Dr. Pearsall several times that he was having back pain; Philon acknowledged, however, that he “might have” told Dr. Pearsall that that back pain was mild. Dr. Pearsall testified that he could have failed to document one complaint of back pain before September 2001 but that he would “find it almost impossible to believe that [Philon] would have mentioned [his claim of back pain] to me on multiple occasions and I would have ignored him on every occasion.”
 

 During Dr. Pearsall’s deposition, the parties’ attorneys questioned Dr. Pearsall regarding whether a change in Philon’s gait due to his leg injury could cause Phi-lon’s back pain. Dr. Pearsall responded that it was possible that a change in Phi-lon’s gait due to the leg injury could contribute to cause some back pain. Dr. Pearsall stated that he believed it was “possible, but not likely,” that the injury to Philon’s leg caused Philon’s back pain.
 

 The record indicates only one instance in which Philon sought treatment for back pain. On April 23, 2002, Philon visited Wayne General Hospital in Waynesboro, Mississippi, with complaints of lower-back pain. On that occasion, the doctor’s report for that hospital visit indicates that the doctor diagnosed Philon as having “low back pain” after a “negative lumbar spine exam.” Philon acknowledged that he did not discuss that treatment with the workers’ compensation provider and that he obtained coverage for that hospital visit through his wife’s health-insurance provider.
 

 At the hearing, Philon presented the testimony of Bill Vinson, a vocational-rehabilitation consultant, as an expert witness. Chadwick Timber objected to the admission of Vinson’s testimony, arguing that Philon’s leg injury was a scheduled injury and, therefore, that evidence pertaining to a vocational disability was not admissible.
 
 Kohler Co. v. Miller,
 
 921 So.2d 436, 444 (Ala.Civ.App.2005) (“Compensation for a permanent partial disability arising from an injury to a scheduled member is governed exclusively by § 25-5-57(a)(3), Ala. Code 1975; thus, ‘evidence of vocational disability cannot serve to further any recovery’ and is irrelevant.”). Vinson testified that, based on Philon’s complaints of leg and back pain and on other factors, including Philon’s illiteracy and lack of transferable job skills, he believed Philon was permanently and totally disabled as a result of the March 8, 2001, on-the-job accident.
 

 In its judgment, the trial court made several factual findings, including the following:
 

 “1. That on March 8, 2001, [Philon] was employed by Defendant, Chadwick Timber Company and that all parties were subject to and operating under the Alabama Workers’ Compensation Act.
 

 
 *1018
 
 “2. That on March 8, 2001, while employed with Chadwick Timber Company as a chainsaw hand, [Philon] sustained injuries while performing his job and said injuries arose out of and in the course of his employment. [Philon] received an injury to his left leg and lower back in the course of performing his work as a chainsaw hand. [Philon] was treated by Dr. Albert Pearsall and Dr. Arthur Wood for the injuries. The Court is satisfied that [Philon] proved causation in the present case.
 

 “3. That [Chadwick Timber] received timely notice of the injury.
 

 [[Image here]]
 

 “7. That the medical testimony provided by Dr. Albert Pearsall concluded that [Philon] can no longer perform his work as a chainsaw hand. Dr. Pearsall, relying on the functional capacities evaluation performed at his request, testified that due to Philon’s injuries his condition would not tolerate that type of work. [Philon’s] performance on the functional capacities evaluation was limited by left knee pain and low back pain, both of which are the result of [Philon’s] injury. Dr. Pearsall further testified that [Philon] could perform no job in the heavy category. The Court finds that these restrictions effectively preclude [Philon] from performing any job which he has held in the past, namely, chainsaw hand.
 

 “8.
 
 That all of [Philon’s] previous employment consisted of heavy strength category jobs. [Philon] was a fifty-two year old male with a 9th grade education at the time of the hearing. He is also functionally illiterate and has never had a driver’s license. Further, the Court finds that as a result of [Philon’s] injury he suffers significant pain on a constant basis.
 

 “[Philon] testified and was a very believable witness. While in court, sitting and testifying [Philon] appeared to be in pain and to have difficulty remaining in one position for any length of time. He testified that the pain is constant and becomes worse with exertion. The pain is in his left knee and lower back. Bill Vinson, a licensed professional counsel- or, who testified as [Philon’s] vocational expert, stated on direct examination that [Philon] is unemployable due to 1) pain, 2) mental retardation (he testified that [Philon’s] IQ is 53), 3) illiteracy, 4) his physical limitations resulting from the injury, and 5) [Philon] has no transferra-ble skills. The Court finds that the medical evidence substantiates [Philon’s] testimony about the significant pain he suffers and that his testimony is completely credible.... ”
 

 On appeal, Chadwick Timber argues that the trial court erred in fashioning its award of benefits to Philon. In so arguing, Chadwick Timber asserts, among other things, that it did not receive adequate or timely notice of Philon’s claim that he had suffered a back injury. Chadwick Timber also argues that Philon did not, in his complaint, indicate that he might be asserting that his back pain constitutes an exception that would remove his claim for benefits for the injury to his leg from the schedule set forth in § 25-5-57.
 

 The record does not indicate at what point Philon notified Chadwick Timber, or at what point Chadwick Timber became aware, that Philon was seeking benefits based on either injury to his leg and back or for back pain allegedly caused by his leg injury. Further, the parties’ questions to Dr. Pearsall at his September 26, 2003, deposition indicate that the issue of back pain might have been tried by the
 
 *1019
 
 implied consent of the parties.
 
 See
 
 Rule 15(b), Ala. R. Civ. P.
 

 “ ‘This court cannot assume error, nor can it presume the existence of facts to which the record is silent.
 
 Dais v. Davis,
 
 420 So.2d 278 (Ala.Civ.App.1982). The appellant has the burden of ensuring that the record contains sufficient evidence to warrant reversal.
 
 Matter of Coleman,
 
 469 So.2d 638 (Ala.Civ.App.1985).’ ”
 

 Leeth v. Jim Walter Homes, Inc.,
 
 789 So.2d 243, 247 (Ala.Civ.App.2000) (quoting
 
 Newman v. State,
 
 623 So.2d 1171, 1172 (Ala.Civ.App.1993)). The record on appeal is not sufficient for this court to analyze the arguments pertaining to notice.
 
 See Goree v. Shirley,
 
 765 So.2d 661, 662-63 (Ala.Civ.App.2000) (this court could not review the issue whether a Rule of Civil Procedure was unconstitutional when no copy of the motion asking the trial court to declare the rule unconstitutional was contained in the record on appeal). Further, because we find other issues to be disposi-tive of this appeal, we need not address the notice issue.
 

 Chadwick Timber also argues that Phi-Ion’s recovery of workers’ compensation benefits should be limited to the compensation set forth in § 25-5-57(a)(3), Ala. Code 1975, for a “scheduled injury.” Specifically, Chadwick Timber contends that, given the facts of this case, Philon could recover benefits only for the injury to his leg. In its April 13, 2006, judgment, the-trial court determined that on March 8, 2001, Philon had “received an injury to his left leg and lower back in the course of performing his work” and that those injuries caused him to be permanently and totally disabled.
 

 We first address Chadwick Timber’s argument that the evidence in the record does not support a conclusion that the March 8, 2001, on-the-job accident caused an injury to Philon’s back.
 
 [1]
 

 “[F]or an injury to be compensable under the Workers’ Compensation Act, the employee must establish both legal and medical causation.... Once legal causation has been established, i.e., once it has been established that an accident arose out of and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.
 
 Hammons [v. Roses Stores, Inc.,
 
 547 So.2d 883 (Ala.Civ.App.1989) ].”
 

 Ex parte Moncrief
 
 627 So.2d 385, 388 (Ala.1993). Chadwick Timber contends that Philon failed to present substantial evidence of medical causation -with regard to his claim that he injured his back as a result of the March 8, 2001, on-the-job accident.
 

 In addressing the requirement that a workers’ compensation claimant establish medical causation, our supreme court has stated:
 

 “In
 
 Ex parte Price,
 
 555 So.2d 1060, 1061 (Ala.1989), this Court held that expert medical testimony is not required to prove medical causation by substantial evidence. Thus, it was not necessary for [the plaintiff] to present testimony from a medical expert tying her injury to her workplace accident. However, the Court also stated in
 
 Price
 
 that
 
 ‘[i]t is in the overall substance and ef-
 
 
 *1020
 

 feet of the tvhole of the evidence,
 
 when viewed in the full context of all the lay and expert evidence, and not in the witness’s use of any magical words or phrases, that the test finds its application.’
 
 Price,
 
 555 So.2d at 1063 (citing
 
 Odell v. Myers,
 
 52 Ala.App. 558, 295 So.2d 413 (1974)) (emphasis omitted; emphasis added).”
 

 Ex parte Southern Energy Homes, Inc.,
 
 873 So.2d 1116, 1121-22 (Ala.2003).
 

 In
 
 Ex parte Southern Energy Homes, Inc.,
 
 supra, the plaintiff presented evidence indicating only that her claimed injury
 
 could
 
 be related to her employment. The court summarized the evidence by stating that “the testimony of the[] doctors at best established a
 
 possibility
 
 that [the plaintiffs] back condition was caused by her alleged on-the-job injury.”
 
 Ex parte Southern Energy Homes, Inc.,
 
 873 So.2d at 1122. The only direct evidence of medical causation regarding the back injury was the plaintiffs own testimony. The court stated that it was not holding that a plaintiffs testimony could never constitute substantial evidence of medical causation. However, it concluded that the “overall substance” of the evidence did not support a finding that the plaintiff was permanently and totally disabled as a result of her on-the-job injury.
 
 Id.
 
 In so holding, the court reiterated that “ ‘[i]t is a well established principle that evidence presented by a [workers’] compensation claimant must be more than evidence of mere possibilities that would only serve to “guess” the employer into liability.’ ”
 
 Ex parte Southern Energy Homes, Inc.,
 
 873 So.2d at 1122 (quoting
 
 Hammons v. Roses Stores, Inc.,
 
 547 So.2d 883, 885 (Ala.Civ.App.1989)).
 

 In
 
 Jackson Landscaping, Inc. v. Hooks,
 
 844 So.2d 1267 (Ala.Civ.App.2002), the worker testified that his back pain was caused by an on-the-job accident. The worker’s doctor testified that “there was a ‘probability [that the worker’s back injury] could have been’ ” caused by the work-related accident. 844 So.2d at 1272. The trial court found the employer liable for the costs of treating the worker’s back injury. However, this court reversed the trial court’s judgment, concluding that the worker did not present substantial evidence to demonstrate his claimed back injury was caused by his on-the-job injury.
 

 In
 
 Valtex, Inc. v. Brown,
 
 897 So.2d 332 (Ala.Civ.App.2004), the worker testified that her cumulative-stress injuries were caused by her employment. Her doctor testified only that it was medically possible that the worker’s employment caused her symptoms. The standard of proof for establishing medical causation in an action seeking workers’ compensation benefits for a cumulative-stress injury is clear and convincing evidence.
 
 Valtex, Inc. v. Brown,
 
 897 So.2d at 337. Although this court applied the appropriate standard in
 
 Valtex,
 
 supra, in reaching its decision this court noted that “[t]here [was] not even substantial evidence of medical causation in [the] case.”
 
 Valtex, Inc. v. Brown,
 
 897 So.2d at 337.
 

 In this case, Philon testified that he had suffered an injury to his back when he fell and hit his back on a tree limb during the March 8, 2001, on-the-job accident. None of Philon’s medical records indicate that he ever told a treating physician that he had suffered a back injury. In the fall of 2001, Philon began telling his physical therapist that he had some back pain, and in September and October 2001, Philon complained to Dr. Pearsall that he had back pain. However, Philon did not relate his complaints of back pain to any specific source. Philon received no treatment for a back injury. Other than his own testimony that he fell and hit his back on a tree limb, Philon failed to present any evidence tending to indicate that he had suffered a
 
 *1021
 
 back injury as a result of his March 8, 2001, on-the-job accident. Given the evidence in the record, we must hold that the “overall substance” of the evidence in the record does not support a conclusion that Philon suffered a back injury on March 8, 2001.
 
 See Ex parte Southern Energy Homes, Inc.,
 
 supra;
 
 Jackson Landscaping, Inc. v. Hooks,
 
 supra.
 

 Our inquiry does not end with our holding that the evidence does not support a conclusion that Philon suffered an injury to his back on March 8, 2001. This court may affirm a correct judgment for any reason, even if the trial court did not rely on that reason in reaching its judgment.
 
 Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.,
 
 611 So.2d 238 (Ala.1992);
 
 Cove Props., Inc. v. Walter Trent Marina, Inc.,
 
 702 So.2d 472, 474 (Ala.Civ.App.1997). Our supreme court has held that injuries to a scheduled member may be compensated outside the compensation schedule set forth in § 25-5-57(a) when the injury “ ‘extend[s] to other parts of the body and interfere^] with their efficiency.’ ”
 
 Ex parte Drummond Co.,
 
 837 So.2d 831, 834 (Ala.2002) (quoting Lex K. Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 87.02 (2001)). Before the trial court and in his brief submitted to this court, Philon argued that changes in his gait caused by his leg injury affected his back, causing him to suffer back pain and contributing to what he claims is his permanent total disability. If properly supported by the evidence, such a claim could support the trial court’s judgment. Therefore, we next address Chadwick Timber’s argument that the evidence does not support a conclusion that any purported change in Philon’s gait resulting from his leg injury caused Philon to suffer back pain such that his injury should be deemed to be compensable outside the compensation schedule set forth in § 25-5-57(a).
 

 We must conclude, as we did in addressing the previous issue, that Philon failed to present substantial evidence of medical causation with regard to his claim that his leg injury extended to other parts of his body so as to cause a permanent and total disability. Philon testified that his leg injury caused him to suffer back pain. However, the only other evidence in the record pertaining to whether Philon’s leg injury caused his back pain was the testimony of Dr. Pearsall. Dr. Pearsall could state only that it was possible, but not likely, that the back pain was caused by a change in Phi-lon’s gait. We cannot hold that the foregoing amounts to “ ‘more than evidence of mere possibilities’ ” that Philon’s back injury was related to the injury to his leg suffered on March 8, 2001.
 
 Ex parte Southern Energy Homes, Inc.,
 
 873 So.2d at 1122. Given the facts of this case, to find Chadwick Timber responsible for workers’ compensation benefits outside the schedule set forth in § 25-5-57(a) based on the foregoing evidence “‘would only serve to “guess” [it] into liability.’”
 
 Id.
 

 Chadwick Timber also contends that because Philon’s recovery was limited to the schedule set forth in § 25-5-57(a), the trial court erred in admitting and relying on the testimony of Vinson, the vocational expert. The trial court admitted that testimony into evidence after it determined that Philon’s injuries fell outside the compensation schedule in § 25-5-57(a). However, this court has reversed the trial court’s determination that Philon’s recovery fell outside the schedule in § 25-5-57. Accordingly, we agree with Chadwick Timber that because Philon’s recovery was limited to that set forth in § 25-5-57, the evidence pertaining to a vocational disability was irrelevant.
 
 Kohler Co. v. Miller,
 
 supra (evidence of vocational disability arising from an injury to a scheduled member is irrelevant). “Evidence which is
 
 *1022
 
 not relevant is not admissible.” Rule 402, Ala. R. Evid.
 

 Chadwick Timber also maintains that the trial court erred in awarding Phi-lon benefits because, it contends, Philon refused or failed to attend physical-therapy sessions. Section 25-5-77, Ala.Code 1975, provides that the injured employee’s right to compensation is suspended when the employee refuses to accept medical services or physical rehabilitation. The evidence in the record indicates that Dr. Pearsall testified that he usually prescribes physical therapy within a few weeks of surgery; however, he did not testify whether he had asked Philon to attend physical-therapy sessions after each of his two surgeries. Dr. Pearsall testified that his notes did not indicate whether Philon attended physical therapy after the March 2001 surgery but that Philon had attended physical therapy after the July 2001 surgery. Dr. Pearsall explained that in September 2001 Philon informed him that he was haring pain and that Philon had not, at that point, gone to physical therapy. Dr. Pearsall instructed Philon to attend physical therapy and then return to see him. The evidence does not indicate that Dr. Pearsall requested that Philon attend physical therapy after the March 2001 surgery. The record does indicate that Philon consistently attended physical-therapy sessions in the fall of 2001. The record also indicates that even if Philon failed to go to physical therapy immediately after the July 2001 surgery, he did comply with Dr. Pearsall’s September 2001 recommendation that he attend physical-therapy sessions. We cannot say that Chadwick Timber has demonstrated error as to this issue.
 

 The trial court’s judgment is reversed. On remand, the trial court is to enter a judgment in compliance with this opinion.
 

 REVERSED AND REMANDED.
 

 PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 MOORE, J., recuses himself.
 

 [1]
 

 . We note that in his brief submitted to this court Philon maintains that he did not seek to establish in the trial court that he had suffered an injury to his lower back on March 8, 2001, when he injured his leg in the on-the-job accident. However, given Philon's own lestimony that he injured his back on March 8, 2001, and the trial court’s specific determination that he had, in fact, suffered an injury to his back as a result of the on-the-job accident, we address Chadwick Timber's argument on this issue.