On Application for Rehearing

THOMPSON, Presiding Judge.
The opinion of August 16, 2013, is withdrawn, and the following is substituted therefor.
DuBose Construction Company, LLC (“DuBose”), appeals from a judgment in favor of James Simmons in this workers’ compensation action. This is the third time these parties have been before this court in this matter.
The record indicates the following relevant information. In 2005, Simmons was working as a foreman for DuBose when he fell and injured his right knee. He sued DuBose for workers’ compensation benefits for that injury. After a trial, the trial court entered a judgment on March 13, 2007, finding that Simmons had suffered a permanent partial disability to the body as a whole and a 15% permanent partial loss of his ability to earn and awarded benefits accordingly. See DuBose Constr. Co. v. Simmons, 989 So.2d 1140, 1141 (Ala. Civ. App.2008).
DuBose appealed, contending that the trial court had erroneously awarded Simmons workers’ compensation benefits based on a loss of earning capacity. Id. DuBose’s position was that Simmons had sustained an injury to his right knee and, therefore, that he was not entitled to recover benefits outside of those permitted in the compensation schedule set forth in § 25-5-57(a), Ala.Code 1975. Id. After setting forth the applicable test for determining whether an injury to a scheduled member should be treated as unscheduled, this court reversed the judgment of the trial court, writing:
“Given the trial court’s failure to make findings concerning whether Simmons’s injury entitled him to workers’ compensation benefits outside the schedule, we must reverse the judgment of the trial court and remand the cause for the trial court to enter a judgment consistent with this opinion.”
Id. at 1143.
On June 17, 2008, four months after this court released its opinion in DuBose Construction, the trial court dismissed the case in its entirety. On October 3, 2011, after a failed attempt to mediate this matter, Simmons filed a petition for a writ of mandamus in which he asked this court to order the trial court to vacate its dismissal. This court granted the petition on November 8, 2011, and directed the trial court to comply with the remand order set forth in DuBose Constmction within 28 days. Du-Bose then filed in our supreme court a petition for a writ of mandamus directing this court to vacate its mandamus order. *353 Our supreme court denied the petition. Ex parte DuBose Constr. Co., 92 So.3d 49 (Ala.2012).
No additional evidence was taken in this case on remand. The record in the current appeal has been supplemented with the record from the initial appeal, which includes the evidence relevant to this appeal. That evidence indicates the following. Simmons was a foreman with Du-Bose when, on February 14, 2005, he slipped and fell at a construction site, injuring his right knee.[1] A magnetic resonance image (“MRI”) of Simmons’s right knee indicated that he had a torn medial meniscus. In April 2005, Dr. Tai Chung operated on Simmons’s right knee to repair the tear.
After the surgery, Simmons continued to suffer pain and swelling in his right knee. On November 9, 2005, he visited Dr. Tucker Mattox, an orthopaedic surgeon. In his deposition, Dr. Mattox testified that he examined Simmons’s right knee and reviewed an MRI of that knee that had been taken on August 22, 2005 — four months after Dr. Chung had operated on the knee. Dr. Mattox said that the MRI indicated that Simmons had a “tear and degeneration of the medial meniscus, primarily involving the posterior horn.” Dr. Mattox testified that he believed that the meniscus tear was causing Simmons’s symptoms of pain and swelling.
In his deposition, Dr. Mattox testified that, because Simmons reported that he had never recovered from his knee surgery of April 2005 and that he had had no new injuries, he “would assume” that the problems Simmons was having with his right knee were from the original February 2005 injury. However, Dr. Mattox continued, numerous things can cause a tear of the medial meniscus, and he could not say with certainty what caused the current tear.
Dr. Mattox performed an arthroscopy on Simmons’s right knee on January 9, 2006. During the procedure, Dr. Mattox said he discovered that, in addition to the meniscus tear, Simmons had chondromala-cia, which Dr. Mattox defined as degeneration of the articular cartilage of the medial femoral condyule, or cartilage in part of the knee joint. The chondromalacia was a “wear-and-tear, arthritic issue” rather than the result of an acute injury, Dr. Mattox said.
After the January 2006 procedure, Simmons went to physical therapy to restrengthen his knee. Dr. Mattox said that when he examined Simmons during routine postoperative visits, Simmons was not experiencing any unusual problems. Dr. Mattox allowed Simmons to return to light-duty work on January 16, 2006, with limited standing or walking. On February 20, 2006, Dr. Mattox said, he was pleased with the motion in Simmons’s knee and believed Simmons’s strength was returning. Dr. Mattox said that Simmons was still complaining of pain with certain activity, which was typical. Dr. Mattox provided Simmons with a knee sleeve to wear for comfort and told him to take nonprescription Motrin or Advil for pain.
Dr. Mattox said that he believed that, on February 20, 2006, Simmons had reached maximum medical improvement (“MMI”), and he released Simmons to return to his normal duties at work. Dr. Mattox testified that he did not impose any work restriction on Simmons, and he did not assign him a permanent medical impairment. Simmons visited Dr. Mattox for the last *354 time on May 10, 2006. At that time, Dr. Mattox said, Simmons still complained of some pain in his knee during certain activities. Dr. Mattox said the pain Simmons described “was not unexpected” because of the two surgeries and the degeneration of the cartilage in Simmons’s right knee. When asked whether the pain Simmons was having in his knee at that time was because of the work-related injury or the degeneration, Dr. Mattox said that, to a reasonable degree of medical certainty, it was his opinion that Simmons’s pain was caused by the degeneration.
Dr. Mattox testified that he did not recall that Simmons ever complained to him of having any pain or problems with any part of his body other than his right knee. He stated unequivocally that there was no reason that Simmons’s knee condition would prevent any other part of his body from functioning properly. Dr. Mattox also said that, after the type of surgery he performed on Simmons, he would not expect Simmons to experience pain in the long term while walking. He also said that he told Simmons that if he had any problems with his knee, Simmons should contact him. However, Dr. Mattox said, he never heard from Simmons after his May 2006 visit.
At trial, Simmons was asked whether the injury to his right knee had affected other parts of his body. Simmons responded that his right foot was numb. He also complained that he was “always in a strain” because, he said, his back was “off balance.” Simmons was asked whether his knee injury affected the way he walked. Simmons said that it did. He was then asked whether he had “any back pains or anything with it.” Simmons replied, ‘Tes.” He also stated that he limped because of his right knee injury.
Simmons acknowledged that he returned to work at DuBose after his injury. His supervisor, William Reid Gaston, Jr., testified that Simmons continued to do good work for DuBose up until the time he voluntarily left work in May 2006. Gaston also said that Simmons was working full time and was able to perform all of his duties up until the time he voluntarily left work. However, Simmons testified that he quit working for DuBose because, he said, he was physically unable to do the job. He has worked for other construction companies since leaving his job with DuBose, earning the same or even a higher income than he was earning before the accident. Simmons testified that he has hired subcontractors to perform jobs he used to be able to do.
On remand, the trial court entered a judgment on October 8, 2012 (“the 2012 judgment”), in which it stated: “Since his initial injury, Simmons has continuously had instability in his knee which created problems with his low back. Although disputed, Simmons left his employment with DuBose Construction Company because he was unable to do the work due to his physical limitations as a result of his knee injury.” The trial court determined that “Simmons was entitled to compensation outside the schedule, which was permanent partial disability to the body as a whole and a 15 percent permanent partial loss of his ability to earn.”
DuBose has now appealed from the 2012 judgment. It again contends that the trial court erred in awarding Simmons benefits based on his loss of earning capacity. Specifically, DuBose says, because only Simmons’s right knee was injured in the accident, his compensation should have been limited to that permitted for a scheduled injury, pursuant to § 25-5-57, Ala. Code 1975. DuBose also contends that Simmons failed to prove that the injury to his right knee had any effect on other parts of his body.
*355 The standard this court uses to review workers’ compensation cases is well settled:
“Section 25-5-81(e), Ala.Code 1975, provides the standard of review in workers’ compensation cases:
“ ‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘ “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).”
White Tiger Graphics, Inc. v. Clemons, 88 So.3d 908, 910 (Ala.Civ.App.2012).
In Ex parte Hayes, 70 So.Sd 1211, 1217 (Ala.2011), our supreme court discussed the test for determining whether an injury to a scheduled member, such as a leg, should be treated as an unscheduled injury to the body as a whole:
“ ‘In [Ex parte ] Drummond [Co., 837 So.2d 831 (Ala.2002) ], this Court adopted the following test: “‘[I]f the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.’ ” 837 So.2d at 834 (quoting 4 Lex K. Larson, Larson’s Workers’ Compensation Law § 87.02 (2001)). This test clearly does not require damage to the physical structure of other parts of the body in order to take an injury out of the schedule.’
“[Ex parte Jackson,] 997 So.2d [1038] at 1039 [ (Ala.2007) ]. As the Court of Civil Appeals recognized in its opinion on remand from this Court’s decision in Jackson:
“ ‘Based on the holding in Ex parte Jackson, supra, in order to prove that the effects of the injury to the scheduled member “extend to other parts of the body and interfere with their efficiency,” the employee does not have to prove that the effects actually cause a permanent physical injury to nonscheduled parts of the body. Rather, the employee must prove that the injury to the scheduled member causes pain or other symptoms that render the nonscheduled parts of the body less efficient.’
“Boise Cascade Corp. v. Jackson, 997 So.2d 1042, 1044 (Ala.Civ.App.2008). We also note with approval the subsequent explanation by the Court of Civil Appeals in Child Day Care Ass’n v. Christesen, 47 So.3d 249 (Ala.Civ.App. 2008):
“ ‘In Ex parte Drummond Co., 837 So.2d 831, 834 (Ala.2002), our supreme court restated the test for determining when an injury to a scheduled member may be treated as a nonscheduled injury to the body as a whole: “ ‘[I]f the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.’ ” (Quoting 4 Lex K Larson, Larson’s Workers’ Compensation Law § 87.02 (2001).) “To ‘interfere’ means ‘to interpose in a way that hinders or impedes.’ See Merriam-Webster’s Collegiate Dictionary 652 (11th ed. 2003). ‘Efficiency’ refers to effective functioning. Id. at 397.” Boise Cascade *356 Corp. v. Jackson, 997 So.2d 1042, 1045 (Ala.Civ.App.2008).’
“47 So.3d at 251.”
In this case, Simmons testified that, because of his knee injury, his back was “off balance” and that he now walked with a limp. In his brief on appeal, Simmons asserts that, as a result of the change in his gait, he also has pain in his right hip and left leg. We note that Simmons failed to cite to the record regarding where such testimony appears. In our review of the record, we did not locate evidence indicating that Simmons was complaining of pain in his right hip or left leg, either by direct testimony or in medical records that related Simmons’s complaints of pain. In its judgment, the trial court found only that Simmons’s knee injury had affected his lower back. Therefore, we must determine whether substantial evidence supports the trial court’s determination that Simmons’s knee injury extended to his back and interfered with its efficiency. See Hayes, 70 So.3d at 1217.
“Under Alabama’s workers’ compensation law, the determination of whether an injury to one part of the body causes symptoms to another part of the body is a question of medical causation. See Honda Mfg. of Alabama, LLC v. Alford, [6] So.3d [22] (Ala.Civ.App.2007). To prove medical causation, the employee must prove that the effects of the scheduled injury, in fact, contribute to the symptoms in the nonscheduled parts of the body. See generally Ex parte Valdez, 636 So.2d 401, 405 (Ala.1994). Therefore, in order to decide whether the employee has satisfied the first prong of the Drummond test, we must determine whether substantial evidence supports the trial court’s finding that the injury to the employee’s foot altered the employee’s gait so as to cause pain in the employee’s back. See Ala.Code 1975, § 25-5-81(e)(2).”
Boise Cascade Corp. v. Jackson, 997 So.2d 1042, 1044 (Ala.Civ.App.2008) (footnote omitted).
In Chadwick Timber Co. v. Philon, 10 So.3d 1014, 1019-21 (Ala.Civ.App.2007), this court discussed at length what constitutes “substantial evidence” of medical causation:
“ ‘In Ex parte Pnce, 555 So.2d 1060, 1061 (Ala.1989), this Court held that expert medical testimony is not required to prove medical causation by substantial evidence. Thus, it was not necessary for [the plaintiff] to present testimony from a medical expert tying her injury to her workplace accident. However, the Court also stated in Price that “[i]t is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence, and not in the witness’s use of any magical words or phrases, that the test finds its application.” Price, 555 So.2d at 1063 (citing Odell v. Myers, 52 Ala.App. 558, 295 So.2d 413 (1974)) (emphasis omitted; emphasis added).’
“Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1121-22 (Ala.2003).
“In Ex parte Southern Energy Homes, Inc., supra, the plaintiff presented evidence indicating only that her claimed injury could be related to her employment. The court summarized the evidence by stating that ‘the testimony of the[] doctors at best established a possibility that [the plaintiffs] back condition was caused by her alleged on-the-job injury.’ Ex parte Southern Energy Homes, Inc., 873 So.2d at 1122. The only direct evidence of medical causation regarding the back injury was the plaintiffs own testimony. The court stated that it was not holding *357 that a plaintiffs testimony could never constitute substantial evidence of medical causation. However, it concluded that the ‘overall substance’ of the evidence did not support a finding that the plaintiff was permanently and totally disabled as a result of her on-the-job injury. Id. In so holding, the court reiterated that ‘ “[i]t is a well established principle that evidence presented by a [workers’] compensation claimant must be more than evidence of mere possibilities that would only serve to ‘guess’ the employer into liability.” ’ Ex parte Southern Energy Homes, Inc., 873 So.2d at 1122 (quoting Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ. App.1989)).
“In Jackson Landscaping, Inc. v. Hooks, 844 So.2d 1267 (Ala.Civ.App. 2002), the worker testified that his back pain was caused by an on-the-job accident. The worker’s doctor testified that ‘there was a “probability [that the worker’s back injury] could have been” ’ caused by the work-related accident. 844 So.2d at 1272. The trial court found the employer liable for the costs of treating the worker’s back injury. However, this court reversed the trial court’s judgment, concluding that the worker did not present substantial evidence to demonstrate his claimed back injury was caused by his on-the-job injury.
“In Valtex, Inc. v. Brown, 897 So.2d 332 (Ala.Civ.App.2004), the worker testified that her cumulative-stress injuries were caused by her employment. Her doctor testified only that it was medically possible that the worker’s employment caused her symptoms. The standard of proof for establishing medical causation in an action seeking workers’ compensation benefits for a cumulative-stress injury is clear and convincing evidence. Valtex, Inc. v. Brown, 897 So.2d at 337. Although this court applied the appropriate standard in Valtex, supra, in reaching its decision this court noted that ‘[t]here [was] not even substantial evidence of medical causation in [the] case.’ Valtex, Inc. v. Brown, 897 So.2d at 337.
“In this case, [the worker] testified that he had suffered an injury to his back when he fell and hit his back on a tree limb during the March 8, 2001, on-the-job accident. None of [the worker’s] medical records indicate that he ever told a treating physician that he had suffered a back injury. In the fall of 2001, [the worker] began telling his physical therapist that he had some back pain, and in September and October 2001, [the worker] complained to Dr. Pearsall that he had back pain. However, [the worker] did not relate his complaints of back pain to any specific source. [The worker] received no treatment for a back injury. Other than his own testimony that he fell and hit his back on a tree limb, [the worker] failed to present any evidence tending to indicate that he had suffered a back injury as a result of his March 8, 2001, on-the-job accident. Given the evidence in the record, we must hold that the ‘overall substance’ of the evidence in the record does not support a conclusion that [the worker] suffered a back injury on March 8, 2001. See Ex parte Southern Energy Homes, Inc., supra; Jackson Landscaping, Inc. v. Hooks, supra.”
As was the case in Chadwick Timber, the evidence indicating that Simmons’s injury to his right knee has affected other parts of his body is sparse. Although he said his knee injury affected his gait and that he was “in a strain” because his back was “off balance,” Simmons never specifically mentioned that he was having lower-back problems, which was the finding of the trial court. Furthermore, Simmons *358 presented no evidence indicating that he ever sought or received medical treatment from any physician for back pain or for any other area of his body that he claims was affected by the injury to his right knee.
On the other hand, Dr. Mattox testified that the tear in Simmons’s right meniscus and the subsequent surgeries to repair the tear did not cause permanent disability. He also said unequivocally that the injury and subsequent surgeries did not have an effect on other parts of Simmons’s body. Dr. Mattox’s testimony also indicated that the surgeries to repair Simmons’s knee injury would not have caused him to limp. He said that, in his opinion, Simmons’s knee pain after May 2006 was the result of the degenerative condition in his knee. Furthermore, Dr. Mattox said that Simmons never complained to him of pain anywhere other than in his right knee. After reviewing the record, we conclude that the “overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence,” does not support the trial court’s conclusion that Simmons’s knee injury affected his lower back. See Chadwick, supra. Therefore, the trial court erred in awarding Simmons workers’ compensation benefits outside of the compensation schedule for a leg injury.
DuBose asks this court to make a finding that Simmons is not entitled to recover any workers’ compensation benefits for his knee injury because, it says, the accident did not leave Simmons permanently disabled. However, from the record before us it is clear that a dispute exists as to the extent, if any, of disability resulting from Simmons’s injury to his right knee. It is the role of the trial court, which has had the opportunity to view Simmons, to determine the degree of disability, if any. Wolfe v. Dunlop Tire Corp., 660 So.2d 1345, 1347 (Ala.Civ.App. 1995) (“The law is well settled that the trial court, which has the duty to determine the extent of the disability, is not bound by expert testimony; yet, in making its determination, the trial court must consider all the evidence before it, including its own observations, and it must interpret the evidence to its own best judgment. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988).”). Accordingly, we leave to the trial court the task of determining the degree of disability, if any, Simmons has as a result of his right-knee injury.
DuBose also argues that the trial court erred in awarding workers’ compensation benefits to Simmons based on his loss of earning capacity because, it says, the undisputed evidence indicated that Simmons had returned to work after his injury and that his annual income after the accident was equal to or greater than it had been before the accident.
The “return-to-work” statute provides:
“i. Return to Work. If, on or after the date of maximum medical improvement, except for scheduled injuries as provided in Section 25-5-57(a)(3), an injured worker returns to work at a wage equal to or greater than the worker’s pre-injury wage, the worker’s permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability.”
§ 25-5-57(a)(3)i, Ala.Code 1975 (emphasis added).
Because we have determined that Simmons did not meet his burden of proving that his injury falls outside of the compensation schedule, we pretermit discussion of this issue.
For the reasons set forth above, we reverse the judgment of the trial court *359 that awards compensation to Simmons based on its determination that Simmons’s injury affected his body as a whole, and we remand the cause for the trial court to determine the degree of disability, if any, Simmons has as a result of the February 14, 2005, injury to his right knee.
Simmons has filed a motion to dismiss this appeal and for sanctions on the ground that the appeal is frivolous. In the motion, Simmons appears to argue that the issues DuBose raises in this appeal are the same as those raised in its first appeal and that the law-of-the-case doctrine bars this appeal.
“ ‘ “[UJnder the ‘law of the case’ doctrine, “whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles,, so long as the facts on which the decision was predicated continue to be the facts of the case.’ ” ’ ” Walden v. ES Capital, LLC, 89 So.3d 90, 107 (Ala.2011) (quoting Miller & Miller Constr. Co. v. Madewell, 920 So.2d 571, 572-73 (Ala.Civ.App.2005), quoting in turn other cases). “ ‘ “The law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the same case, thereby hastening an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided.” ’ ” Id. (quoting Martin v. Cash Express, Inc., 60 So.3d 236, 249 (Ala.2010), quoting in turn Belcher v. Queen, 39 So.3d 1023, 1038 (Ala.2009)); see also Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.l987)(same).
In the previous appeal of this case, this court did not decide any issues of law. DuBose Construction, 989 So.2d at 1143. Instead, we reversed the trial court’s judgment and remanded the cause for the trial court to make findings concerning whether Simmons’s injury entitled him to benefits outside the schedule. Id. The trial court made findings of fact it believed supported its judgment. In this appeal, for the first time, this court considered whether substantial evidence supported those findings; thus, the law-of-the-case doctrine was inapplicable to the issues raised. Accordingly, Simmons’s motion to dismiss the appeal and for the imposition of sanctions against DuBose is denied.
APPLICATION OVERRULED; OPINION OF AUGUST 16, 2013, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without'writing.

. Simmons testified that he also injured his little finger when he fell but that his finger was "fine” at the time of the trial.